**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) MARIA DEL ROSARIO CHICO VIETTI, Individually and as Parent and Next Friend of A.R.V., P.F.V. and H.S.V., minor children, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 21-CV-58-JFH-CDL |
| (1) WELSH & MCGOUGH, PLLC, an Oklahoma Professional Limited Liability Corporation; (2) CATHERINE WELSH, an individual, and (3) JAIME VOGT, LPC, an individual, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MOTION OF WELSH & MCGOUGH, PLLC AND CATHERINE WELSH
TO DISMISS FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM, WITH BRIEF IN SUPPORT**

Defendants Welsh & McGough, PLLC ("W&M") and Catherine Welsh again move the Court to dismiss the putative claims within Plaintiff's First Amended Complaint ("FAC") concerning breach of contract, negligence, an undefined § 1983 violation, and the remedy of punitive damages because (1) Defendant Catherine Welsh is a court-appointed guardian ad litem in an underlying custody dispute,[1] and is therefore immune from suit for all acts arising out of or relating to the discharge of her duties as guardian ad litem; and (2) Plaintiff has failed, in any event, to plead any of (a) the existence of any relevant contract with W&M or Welsh, (b) any distinct duty owed to the Plaintiff or any child apart from the duties owed to the Tulsa County District Court that appointed her as guardian ad litem, or (c) any plausible violation of 42 U.S.C. § 1983.

---

[1] The Court may take judicial notice of the publicly available docket sheet in that action, available at <https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=FD-2018-1255>.

## **Introduction**

As identified by Plaintiff's FAC, Plaintiff is the respondent in a divorce and custody action pending in the District Court of Tulsa County as No. FD-2018-1255.  (FAC ¶ 10).  In that underlying case, which remains pending, Plaintiff has utilized five different counsel as part of her ongoing effort to convince the Court that her children have suffered physical and sexual abuse. Catherine Welsh was appointed guardian ad litem on July 12, 2018, and both conducted an investigation and issued a report concerning her findings.  Since at least May 2019, Plaintiff has sought to remove Welsh as guardian ad litem and to strike her report because she disagrees with Welsh's conclusions.  Plaintiff's initial efforts were denied by Order of August 27, 2020.  Since that time, however, Plaintiff again changed counsel and initiated a renewed effort both to demonstrate abuse and to discredit both Welsh and Defendant Vogt.  That proceeding—which has included numerous alleged emergency requests by Plaintiff—continues at the time of this filing. Regardless, Judge Bruce has <u>never</u> concluded that Plaintiff's allegations of abuse have merit, and instead has allowed joint custody.  Consequently, Plaintiff has refused to pay the fees incurred by Welsh and ordered by Judge Bruce, and most recently has pleaded "not guilty" as part of a contempt proceeding held on March 22, 2021.

Upon that understanding, this action is merely collateral litigation in which Plaintiff is attempting to relitigate (for a third time) the allegations of abuse currently pending in No. FD-2018-1255.  Unable to obtain the removal of Welsh as guardian ad litem in that case, she has now initiated this action to pursue alleged damages.  Yet, this action is demonstrably meritless as a consequence of the immunity from suit afforded to a guardian ad litem by both Oklahoma law and by federal law.  Guardians ad litem cannot have liability simply because they disagree with the position taken by one parent in a custody dispute.  Moreover, even if that immunity were not plainly established, Plaintiff has failed to plead the required elements of any of her putative claims.

The Court should summarily dismiss this action for failure to state a claim, and should grant that dismissal with prejudice to refiling because no allegations can overcome the immunity from suit afforded by law.

## The Material Allegations of Plaintiff's FAC Against W&M and Welsh

1.      Catherine Welsh was at all relevant times an employee or agent of W&M.  (FAC ¶ 4).  This allegation is the sole pleaded basis for the liability of W&M.

2.      Catherine Welsh was appointed as guardian ad litem in No. FD-2018-1255 on July 12, 2018.  (FAC ¶ 10).

3.      The Tulsa County District Court in No. FD-2018-1255 adopted Catherine Welsh's recommendations.  (FAC ¶ 11).

4.      Catherine Welsh received "findings and opinions" from Defendant Vogt "in a manner and to an extent which will be determined through discovery."  (FAC ¶ 39).[2]

5.      Catherine Welsh was aware of the allegations concerning sexual and physical abuse of the Vietti children and both "disregarded those allegations" and "went above and beyond to make sure the abusive father obtained as much visitation with the children as possible."  (FAC ¶ 40).

6.      "Upon information and belief that will be confirmed through discovery," Catherine Welsh was "engaged in a scheme" with counsel for the father in No. FD-2018-1255 to seek her

---

[2] Significantly, the Court may take judicial notice that Catherine Welsh was appointed guardian ad litem pursuant to 43 O.S. § 107.3.  That statute expressly provides that a guardian ad litem "is not subject to discovery pursuant to the Oklahoma Discovery Code"—a substantive law command that should also prevail in this diversity action. *See* 43 O.S. § 107.3(A)(2)(e).  This legal reality, of course, only serves to reinforce immunity from suit by confirming the legislative intent to remove the decisions of guardians ad litem from litigation scrutiny.

appointment as guardian ad litem (FAC ¶ 41), and to "advocate on the father's behalf in the Divorce while financially benefitting from Plaintiff" (FAC ¶ 42).

7.      "Upon information and belief that will be confirmed through discovery," Catherine Welsh "exceeded the scope of [her] duties and responsibilities as guardian ad litem" by, among other things, "engaging in a scheme to financially benefit [herself] at the expense of Plaintiff." (FAC ¶ 44).

### The Applicable Pleading Standard

To state a claim for relief under Rule 8(a)(2) that can withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Claimants must "do more than generally allege a wide swath of conduct" but, instead, must allege sufficient facts to "nudg[e] their claims across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570); *see Iqbal,* 556 U.S. at 696.  "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 (a complaint which merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice under Rule 8).  Conclusory statements of law carry no presumption of truth or validity. *See Iqbal*, 556 U.S. at 678.  And conclusory allegations of fact made "upon information and belief" are insufficient to make a claim plausible under *Twombly* and *Iqbal*.  *See In re: Lee*, No. 14-11872, 2019 WL 5849059 at *2 (Bankr. Kan. Nov. 7, 2019).

## Argument

### I.    As a Matter of Law, a Guardian ad Litem Enjoys Immunity From Suit.

Plaintiff has expressly pleaded that Catherine Welsh was appointed as guardian ad litem in No. FD-2018-1255 on July 12, 2018.  (FAC ¶ 10).  In the course of that appointment, she conducted an investigation and issued a report that was adopted by the District Court in No. FD-2018-1255. (FAC ¶ 11).

#### A.    Oklahoma law

Since at least 2000, Oklahoma law has reflected that "a court-appointed guardian ad litem in a custody matter is immune from suit by the ward or any other party, for all acts arising out of or relating to the discharge of his duties as guardian ad litem."  *Perigo v. Wiseman*, 11 P.3d 217, 217-18 (Okla. 2000) (issuing a writ of prohibition to Judge Wiseman to prevent further proceedings in CJ-00-2070 against guardian ad litem Jerry Perigo).  The result in *Perigo* is neither surprising nor peculiar, as Oklahoma statutes concerning the appointment of guardians ad litem and court-appointed special advocates also feature express grants of immunity from civil liability. *See* 10 O.S. § 7505-1.2(B)(5) ("Any person participating in a judicial proceeding as a guardian ad litem shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any civil liability that otherwise might be incurred or imposed."); 10A O.S. § 1-8-102(D) (explaining that a court-appointed special advocate "shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any civil liability that otherwise might be incurred or imposed").  Indeed, it is difficult to imagine a contrary rule.  Obviously, any guardian ad litem must reach conclusions of fact and make recommendations to a court that are unlikely to please both parents.  *See* 43 O.S. § 107.3(A)(2) (defining the responsibilities of a guardian ad litem).  If a guardian ad litem in a divorce/child custody proceeding could have civil liability for issuing a report that includes conclusions adverse to one parent, no one would be willing to serve, and

domestic courts would be unable to conduct the investigations necessary to make any orders that precede a trial on the merits.

Accordingly, as a matter of Oklahoma law, and with respect to the investigation, reporting and conclusions offered in No. FD-2018-1255, Catherine Welsh enjoys complete immunity from liability pursuant to any state law claim.

**B.    Federal law**

As explained by the Tenth Circuit in *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Trust*, 744 F.3d 623 (10th Cir. 2014), guardians ad litem enjoy absolute quasi-judicial immunity except with respect to actions taken in the "clear absence of all jurisdiction":

> Absolute immunity has long been available to protect judges from liability for acts performed in their judicial capacity. *See Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Over time the defense has been extended to "certain others who perform functions closely associated with the judicial process." *Id*. at 200, 106 S.Ct. 496. There is widespread recognition that guardians ad litem are entitled to the defense, which is often called quasi-judicial immunity when it is applied to someone other than a judge. *See Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir.1989) (guardian ad litem has "absolute quasi-judicial immunity for those activities integrally related to the judicial process"); *Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir.1989) ("We would agree that a guardian [ad litem] should be absolutely immune when acting as an integral part of the judicial process." (brackets and internal quotation marks omitted)); *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir.1994) (guardians ad litem in custody cases are entitled to quasi-judicial immunity from § 1983 liability); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984) ("A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings."); *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir.2009) ("Guardians ad litem ... are absolutely immune from liability for damages when they act at the court's direction."); *McCuen v. Polk Cnty., Iowa*, 893 F.2d 172, 174 (8th Cir.1990) (guardian ad litem is entitled to absolute immunity); *Wideman v. Colorado*, 409 Fed.Appx. 184, 186 (10th Cir.2010) (affirming grant of absolute quasi-judicial immunity to a guardian ad litem).
>
> There are limits to the scope of the immunity for a GAL. Not every act performed by a person with that title is immunized. For example, there is no immunity for acts taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotation marks omitted). We need not resolve the precise boundaries of the privilege, however, because Mr. Peterson's challenged acts were within the core duties of a GAL in assisting the

> court—that is, in performing a "function [ ] closely associated with the judicial
> process." *Cleavinger*, 474 U.S. at 200, 106 S.Ct. 496. As a fellow circuit has said,
> "[A] guardian ad litem would be absolutely immune in exercising functions such
> as testifying in court, prosecuting custody or neglect petitions, and making reports
> and recommendations to the court in which the guardian acts as an actual
> functionary or arm of the court, not only in status or denomination but in reality."
> *Gardner*, 874 F.2d at 146.

*Id*. at 630.  Plaintiff's FAC contains no allegation that Catherine Welsh at any time acted in the

"clear absence of all jurisdiction."  Accordingly, as a matter of federal law, and with respect to the

investigation, reporting and conclusions offered by Welsh in No. FD-2018-1255, she is also

absolutely immune from liability pursuant to any federal claim, including the § 1983 allegations

asserted in Plaintiff's FAC.

### C.    Plaintiff's effort to plead around immunity from suit

The immunity from suit enjoyed by a guardian ad litem—whether sourced from state law

or federal law—is not altered by Plaintiff's unadorned, conclusory pleading "upon information

and belief" that Catherine Welsh "exceeded the scope of [her] duties and responsibilities as

guardian ad litem." (FAC ¶ 44).  First, the unqualified rule of *Perigo* is that a guardian ad litem is

provided immunity from suit "for all acts arising out of or relating to the discharge of his duties as

guardian ad litem."  *Perigo*, 11 P.3d at 217-18.  Similarly, the concept of quasi-judicial immunity

applies to all actions within a guardian ad litem's jurisdiction.  *See Dahl*, 744 F.3d at 631

("Immunity does not protect only the innocent. Why grant immunity to those who have no need

of it?").  Obviously, the acts of which Plaintiff complains—the investigation, report and

conclusions offered by Welsh and accepted by Judge Bruce—can be offered only in her capacity

as guardian ad litem.

Even if that were not true, however, Plaintiff has not come close to pleading any plausible

allegation that Welsh acted outside that framework in the "clear absence of all jurisdiction."  *See*

*Schwab v. Kansas Dep't of Children and Families*, No. 20-3099, 2021 WL 982246 at *8 (10th Cir.

Mar. 16, 2021) (affirming the dismissal of pleaded contentions that a guardian ad litem "worked outside the scope of her position by engaging in various types of allegedly wrongful conduct as asserted in their complaint, including failing to investigate and provide a report to the court; acting as a fact finder for the court; promoting a narrative she knew or should have known was false" and others because "a guardian ad litem's act does not fall outside her jurisdiction just because it was in error, wrongful, unlawful, done maliciously, or in excess of her authority. This is so because '[i]mmunity is conferred so that judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort.'" (citations omitted)); *Dorf v. City of Evansville*, No. 11–CV–351–S, 2012 WL 1440343 at \*4 (D. Wyo. Apr. 22, 2012) (explaining that where the plaintiffs' allegations "upon information and belief" concerning a guardian ad litem were "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" (*quoting Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Here, it is certainly colorable—as Judge Bruce has thus far concluded in No. FD-2018-1255—that there is no actual physical or sexual abuse of Plaintiff's children. Accordingly, Plaintiff's pleading that Welsh "exceeded the scope her duties" provides no basis for evading immunity from suit.

Nor is immunity from suit is altered by Plaintiff's abbreviated allegations—again "upon information and belief"—that Catherine Welsh "engaged in a scheme" with counsel for the father in No. FD-2018-1255, having as its goal the reaping of alleged financial benefits to be extracted from Plaintiff. (FAC ¶¶ 41-42). Such conclusory allegations, added at the close of Plaintiff's "Facts Common to All Claims," fail to provide any foundation for, or colorable factual basis supportive of, the conclusion that any "scheme" or conspiracy is present. *See, e.g.*, *Aliyev v. FedEx Ground Package Sys., Inc.*, No. 2:12–CV–1079–TC, 2014 WL 1338583 at \*8 (D. Utah Apr. 3,

2014) (rejecting the allegation that "Upon information and belief, Defendant FedEx has a pattern and practice of terminating employees which [sic] are non-native English speakers" by noting that "nothing in the Complaint's 'General Allegations' provides supplemental information that takes Mr. Aliyev's claim out of the conclusory allegation realm prohibited by *Iqbal* and *Twombly*").[3]

Nor, in any event, has Plaintiff pleaded the alleged "scheme" to deprive Plaintiff of money in exchange for ignoring or falsely reporting facts to Judge Bruce with the particularity required by Fed. R. Civ. P. 9(b). As the Court knows well, Rule 9(b) requires a party pleading fraud to "set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998)). With respect to those details of the alleged "scheme," Plaintiff's silence is representative of the entirety of her pleading: It is replete with aspirational speculation that cannot move out of the realm of the possible and into the realm of the plausible and the particular. *See, e.g.*, *Rich Media Club, LLC v. Mentchoukov*, No. 2:11–CV–1202 TS, 2012 WL 1119505 at *7 (D. Utah Apr. 3, 2012) (dismissing fraud allegations made "upon information and belief" for failure to plead circumstances giving rise to the fraud).

## II.   Irrespective of Immunity from Suit, Plaintiff Has Failed to Plead Any Actionable Claim.

### A.   Breach of Contract

Plaintiff asserts that "[t]he individual Defendants were contractually obligated to diligently represent the best interest of the minor children in [No. FD-2018-1255]," and that "Defendants

---

[3] Notably, Plaintiff has pleaded no civil conspiracy or similar theory of liability, nor has she named as a Defendant all persons allegedly part of the "scheme" identified by her pleading. (FAC ¶¶ 41-44).

breached these contracts when they became aware of the abuse being suffered by the minor children and failed to protect them." (FAC ¶¶ 47-48). As was true of Plaintiff's original Complaint, the problem with these allegations is that the FAC never identifies or even references which contract or contracts allegedly exist between either (1) W&M and Plaintiff or (2) Catherine Welsh and Plaintiff. Obviously, any breach of contract claim requires, among other elements, identification of the contract or contracts allegedly breached. *See, e.g., Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) ("In order to recover on its breach of contract theory, Digital needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."). When a Complaint is devoid of allegations that identify any alleged contract, the Complaint inherently fails to state a plausible claim for breach of contract. Indeed, that result is required in this action for an additional reason: Because Plaintiff has pleaded that Catherine Welsh was acting as a court-appointed guardian ad litem (FAC ¶ 10), no contract was ever necessary to define the guardian's role or to specify the payment obligation owed by Plaintiff. *See, e.g.*, 43 O.S. § 107.3(A)(3) ("Expenses, costs, and attorney fees for the guardian ad litem may be allocated among the parties as determined by the court."). All breach of contract allegations should be dismissed.

### B.      Negligence

In support of her putative tort claim, Plaintiff alleges the following legal conclusion:

> Defendants owed a duty to the Vietti children to protect and actively pursue the most prudent and swift remedies available to save them from being exposed to irreparable harm. Instead, Defendants inexplicably delayed said intervention, thus delaying the ability to protect the minor children and expose them to continued abuse.

(FAC ¶ 52). Not only is the Court free to disregard that legal conclusion pursuant to the law of federal pleading, but existing Oklahoma law clarifies that the duties owed by a guardian ad litem are owed to the district court, not to the Plaintiff or her children. As explained in *Kahre v. Kahre*,

916 P.2d 1355 (Okla. 1995), a guardian ad litem "becomes an officer of the court." *Id.* at 1362.

And, in relation to the duties owed by the guardian ad litem, the Supreme Court provided the

following analysis:

> In custody matters the guardian ad litem has almost universally been seen as owing his primary duty to the court that appointed him, not strictly to the child client. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 384 (Mo.App.1993). See also Elrod, Counsel for the Child in Custody Disputes: The Time is Now, 26 Fam.L.Q. 53, 59–62 (1992), in which the author observes that the guardian ad litem fills a void for the court. Without the guardian ad litem, the trial court has no practical means to ensure that it receives the information it needs to secure the best interests of the child are served until after the information has been filtered through the adversarial attitudes of the warring parents. The guardian ad litem makes his own investigation as the trial court's agent. The wishes of the minor child are one factor to be considered, but the guardian ad litem's obligation remains the same as that of the trial court: the child's best interests, although the child's wishes may be otherwise.

*Id.* at 1362 (emphasis added); *see also Rowe v. Rowe*, 218 P.3d 887 (Okla. 2009) (reiterating the

same analysis); 43 O.S. § 107.3(A)(2) ("The guardian ad litem may be appointed to objectively

advocate on behalf of the child and act as an officer of the court . . . ." (emphasis added)).

Accordingly, as an officer of the court, the duties owed by Catherine Welsh are owed to the district

court in No. FD-2018-1255, and that court has rejected Plaintiff's prior efforts to remove Mrs.

Welsh as guardian ad litem.[4]  Instead, as pleaded by Plaintiff, the district court adopted Mrs.

Welsh's recommendations.  (FAC ¶ 11).

There simply is no distinct and independent duty owed by Catherine Welsh to Plaintiff's

children, and Plaintiff's pleading of such a duty is, therefore, contrary to Oklahoma law.  In the

absence of such a duty, Plaintiff has no claim for negligence.  *See, e.g.*, *Wood v. Mercedes-Benz*

---

[4]  Again, the Court may take judicial notice of the Order of August 27, 2020 in No. FD-2018-1255.

*of Okla. City*, 336 P.3d 457, 459 (Okla. 2014) ("For claims predicated on negligence, the threshold question is the existence of a duty. Whether a duty existed is a question of law." (citation omitted)).

### C.      42 U.S.C. § 1983

Pleading "[i]n the alternative" (FAC ¶ 56), Plaintiff alleges that Catherine Welsh "violated the Eighth and/or Fourteenth Amendments of the United States Constitution" by acting "under color of state law."  (FAC ¶ 57).  Although the previously-referenced doctrine of quasi-judicial immunity affords Welsh and W&M complete immunity from a § 1983 claim, *see Schwab*, 2021 WL 982246 at *8 (affirming the dismissal of § 1983 claims asserted against a guardian ad litem on the basis of quasi-judicial immunity), Plaintiff additionally fails to state a plausible § 1983 claim on the basis of the requirements of Rule 8(a) alone.

Plaintiff never identifies any action by Catherine Welsh that colorably fits within any interest protected by either the Eighth or Fourteenth Amendments.  Eighth Amendment claims, for example, are commonly asserted for use of excessive force.  Yet, Plaintiff never alleges that Catherine Welsh had any physical contact of any kind with any of her children.  Nor does Plaintiff plead that Catherine Welsh took any action violative of any right guaranteed by the Fourteenth Amendment.  Instead, Plaintiff's theory appears to be that a guardian ad litem can have § 1983 liability for alleged physical injuries inflicted by a <u>third party, non-state actor</u> (in this case, Plaintiff's husband).  (FAC ¶¶ 60-62).  That conclusion, of course, is contrary to the very purpose of § 1983, which is to provide a remedy for violations of federal law by <u>state</u> actors.  *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 203 (1989) (affirming a grant of summary judgment to state actors who were sued pursuant to § 1983 for injuries inflicted upon a child by the child's father, and noting that "the harm was inflicted not by the State of Wisconsin,

but by Joshua's father").  As the Supreme Court explained its understanding of the Fourteenth

Amendment in relation to § 1983:

> [N]othing in the language of the Due Process Clause itself requires the State to
> protect the life, liberty, and property of its citizens against invasion by private
> actors. The Clause is phrased as a limitation on the State's power to act, not as a
> guarantee of certain minimal levels of safety and security. It forbids the State itself
> to deprive individuals of life, liberty, or property without "due process of law," but
> <u>its language cannot fairly be extended to impose an affirmative obligation on the
> State to ensure that those interests do not come to harm through other means</u>.

*Id.* at 195 (emphasis added).

The Tenth Circuit has embraced precisely this analysis in holding that § 1983 allegations

against alleged state actors did not state an actionable claim when the alleged harm was inflicted

by a non-state actor.  In *Robbins*, the Circuit held that "allegations of 'lulling' and 'doing nothing'"

by state actors are insufficient to state a claim.  As explained by the Circuit:

> *DeShaney* holds that the state has no affirmative obligation under the Due Process
> Clause to protect "the interests of life, liberty, and property of its citizens against
> invasion by private actors."  489 U.S. at 195, 109 S.Ct. 998. Therefore, the
> defendants cannot be held liable for their failure to protect Renee from harm, absent
> some prior affirmative act that incurred a duty to protect. *Graham v. Indep. School
> Dist. No. I–89*, 22 F.3d 991, 995 (10th Cir.1994) ("Inaction by the state, in the face
> of a known danger is not enough to trigger ... an affirmative duty to protect."). <u>The
> mere "fail[ure] to take steps to ensure that Renee was placed in a safe environment"
> is insufficient as a matter of law to result in liability</u>.

*Id.* at 1252 (emphasis added).

Therefore, Plaintiff's alternative § 1983 claim fails as a matter of law not only because of

the protections afforded by the doctrine of quasi-judicial immunity, but also because Plaintiff

cannot plead a viable claim against a guardian ad litem for physical harm allegedly caused by a

non-state actor.

### D.    Punitive Damages

Punitive damages are merely a remedy available, in certain instances, after a demonstration

of breach of an obligation not arising from contract.  *See* 23 O.S. § 9.1; *Rodebush By and Through*

*Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993) (explaining that a request for punitive damages "does not constitute a separate cause of action," and that "[t]he plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages." (emphasis added) (citations omitted)).  In this action, in which Plaintiff can have no Fed. R. Civ. P. 8(a)(2) tort "claim," Plaintiff's request for the remedy of punitive damages must also be dismissed as a matter of law.

## Relief Requested

This is an action in which Plaintiff's disagreement with the conclusions reached by the guardian ad litem in No. FD-2018-1255 in the District Court of Tulsa County has led her not only to seek the removal of guardian ad litem and the striking of her report (both denied by Judge Bruce) in that action, but also the commencement of this collateral action in which she seeks to relitigate the very claims of child abuse that have already been denied once, and that now are being litigated for a second time, in No. FD-2018-1255.  To that end, Plaintiff masquerades her disagreement concerning child abuse claims as claims for breach of contract, negligence and § 1983 in an effort to suggest that damages may be owed.  But Plaintiff has not only failed to plead the required elements of her claims, but has also wholly ignored the immunity from suit afforded to a guardian ad litem by both Oklahoma law and federal law.  The entirety of Plaintiff's Complaint should be dismissed for failure to state any claim against either Catherine Welsh or W&M with prejudice to refiling, as (1) Plaintiff has already amended her Complaint once, having notice of both immunity from suit and the legal deficiencies of her pleading, and (2) no amended pleading can defeat the immunity from suit enjoyed by a guardian ad litem.

Respectfully submitted,

Todd G. Tucker, OBA #15469
WELSH & MCGOUGH, PLLC
2727 E 21st St #600
Tulsa, OK 74114
Phone: (918) 585-8600
Fax: (918) 794-4411
Email: todd@tulsafirm.com


and


 /s/*Bradley W. Welsh*
Bradley W. Welsh, OBA #18488
GABLE & GOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK  74103
Phone: (918) 595-4800
Fax: (918) 595-4990
E-mail: bwelsh@gablelaw.com

### <u>CERTIFICATE OF SERVICE</u>

On March 24, 2021, I electronically transmitted the attached document to the Clerk of Court for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II
Laura Hamilton
Dustin Vanderhoof

Paige N. Shelton
Robert D. James


 /s/*Bradley W. Welsh*