**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) MARIA DEL ROSARIO CHICO VIETTI, )
　　　Individually and as Parent and Next )
　　　friend of A.R.V., P.F.V. and H.S.V., )
　　　minor children, )
　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　 )　　　Case No.: 21-CV-58-JFH-SH
　　　v. )
　　　　　　　　　　　　　　　　 )
(1) WELSH & MCGOUGH, PLLC; an )
　　　Oklahoma Professional Limited Liability )
　　　Corporation; )
(2) CATHERINE WELSH, an individual; )
　　　AND, )
(3) JAIME VOGT, LPC, an individual, )
　　　　　　　　　　　　　　　　 )
　　　　　Defendants. )

**PLAINTIFF'S RESPONSE TO DEFENDANT JAMIE VOGT'S**
**MOTION TO DISMISS [DKT # 21]**

Respectfully submitted,

Sᴍᴏʟᴇɴ | Lᴀᴡ, ᴘʟʟᴄ

/s/ Dustin J. Vanderhoof
Donald E. Smolen, II, OBA #19944
Laura Hamilton, OBA #22619
Dustin Vanderhoof, OBA #21388
611 South Detroit Avenue
Tulsa, Oklahoma 74120
P: (918) 777-4529
F: (918) 890-4529 (Fax)
don@smolen.law
laura@smolen.law
dustin@smolen.law

April 26, 2021

<u>TABLE OF CONTENTS</u>

<u>Page No.</u>

Table of Authority ............................................................................................................... iii

Introduction ........................................................................................................................ 1

Summary of the Allegations ............................................................................................... 2

Standard of Review ............................................................................................................. 6

Argument and Authority ..................................................................................................... 6

    I.    ***Plaintiff is Permitted to Bring a Negligence Claim Against Defendant Vogt for Vogt's Failure to Report Child Abuse as Mandated by Oklahoma Law*** .................................................................. 6

    II.    ***Plaintiff Sufficiently Alleged that Vogt Breached Her Contract With Plaintiff*** ................................................................................... 9

    III.    ***Plaintiff Has Sufficiently Alleged a Claim Under Section 1983*** ....................... 10

        1.    Defendant Vogt Created the Danger and Increased the Children's Vulnerability. .................................................... 12

        2.    Defendants' Conduct, as Alleged, Was Conscience Shocking ..................................................................... 15

        3.    Defendant Vogt is Not Entitled to Qualified Immunity ........................... 17

            a.    Underlying Constitutional Violation .............................. 18

            b.    The Law was Clearly Established in 2018 ..................... 18

    IV.    ***Defendant Vogt is Not Entitled to Judicial Immunity or Immunity as a Guardian Ad Litem*** ................................................ 20

    V.    ***The Younger and Rooker-Feldman Doctrines Do Not Apply.*** ........................ 23

    VI.    ***Plaintiff Can Maintain Individual Actions for Harm Caused to Her*** ............................................................................... 24

Conclusion ........................................................................................................................ 25

Certificate of Mailing ....................................................................................................... 26

<u>TABLE OF AUTHORITY</u>

Page No.

<u>Cases</u>

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*,
159 F.3d 1253 (10th Cir. 1998) .......................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................6

*Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457 (10th Cir. 1997) ................. 9-10

*Brady v. Criswell Funeral Home, Inc.,* 1996 OK CIV APP 1 ................... 24-25

*Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008) ......................................15

*Cares v. Integris Health, Inc.,* 2018 OK 9, 412 P.3d 98 ....................................9

*Christopher Joseph Vietti v. Maria Rosario Chico-Vietti,*
Tulsa County District Court Case No. FD-2018-1255 .......................................1

*Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010) ..............................................18

*Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001) ....................................... 11, 15, 19-20

*Dahl v. Charles F. Dahl, M.D., P.C.*, 744 F.3d 623 (10th Cir. 2014) .............20

*Daniels v. Williams,* 474 U.S. 327 (1986) .......................................................10

*DeShaney v. Winnebago County Dept. of Social Servs.,*
489 U.S. 189 (1989).........................................................................................10

*Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 109 (Okla. 1986) ............................. 24-25

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC,*
953 F.3d 660
(10th Cir. 2020)................................................................................................23

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)..............................24

*Falk v. Sadler,* 533 S.E.2d 350, 353 (S.C. 2000)...................................... 20-22

*Gallagher v. Neil Young Freedom Concert,*
49 F.3d 1442, 1447 (10th Cir. 1995) ..............................................................12

*Hartley v. Williamson*, 2001 OK CIV APP 6, 18 P.3d 355 ........................................................22

*Kerns v. Independent School Dist. No. 31 of Ottawa County,*
984 F. Supp. 2d. 1144 (N.D. Okla. 2013) .................................................................................15

*Massachusetts Bay Ins. Co. v. Langager,*
2017 WL 3586862 (N.D. Okla. Aug. 18, 2017) ........................................................................6

*Meeker v. Kercher*, 782 F.3d 153 (10th Cir. 1986)..........................................................13

*Paulson v. Sternlof*, 2000 OK CIV APP 128, 15 P.3d 981 ...................................................7

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ....................................................11

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009)...................................18

*Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) ........................................................10

*Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996).............................................................11

*Sheetz v. Norwood*, 608 Fed. Appx. 401 (7th Cir. 2015) .................................................24

*Sticesen v. Fay*, 783 Fed. Appx. 26 (2nd Cir. 2019) ........................................................24

*T.A. v. Moore Public Schools*, No. CIV-06-858-C,
2008 WL 11417305 (W.D. Okla. April 23, 2008) ...................................................................7-8

*T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017).........................................................13-19

*Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014).........................................................17

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995) .....................................................10-11, 15

*Vogt v. City of Hays, Kansas*, 2017 WL 34455 (10th Cir. Jan. 4, 2017).........................6

*Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)......................23

Statutes

10A O.S. § 1-2-101. ..........................................................................................................6-8

10 O.S. § 7103(A)(1) .........................................................................................................8

15 O.S. § 131 ............................................................................................................ 9-10

15 O.S. § 133 ............................................................................................................ 10

U.S. Const. Amend. XIV § 1 .................................................................................... 10

COMES NOW the Plaintiff and asks the Court to deny Defendant Jaime Vogt's Motion to Dismiss (Dkt. #21). In support, Plaintiff states the following:

## INTRODUCTION

This case arises out of Defendants Vogt and Welsh going beyond the scope of their engagement in a case styled *Christopher Joseph Vietti v. Maria Rosario Chico-Vietti*, Tulsa County District Court Case No. FD-2018-1255 (the "Divorce Action"), advocating on behalf of the father of Plaintiff's children, and ultimately failing their respective professional and statutory duties to report the father's abuse of Plaintiff's children.  The Court appointed defendants Welsh and Vogt in the Divorce Action on July 12 and July 18, 2018 respectively.  From their appointments, Defendants have exhibited a pattern of neglect of Plaintiff's children under their care, malfeasance, and misconduct.  From the outset of their appointment, Defendants knew that the children's father had abused Plaintiff and was abusing Plaintiff's children.  Further, Defendants knew that the children's father abused substances and had exposed the children to domestic violence.  Yet, Defendants never reported this abuse as required by their professional standards and Oklahoma law.  Instead, Defendants **advocated on the father's behalf**.  Defendants did this to benefit themselves financially.  As a result of Defendants' failures and omissions, the minor children were, and continue to be, exposed to prolonged physical, sexual, and emotional abuse and neglect.

Plaintiff filed this action alleging negligence, breach of contract, and violation of Plaintiff's children's constitutional rights.  Defendant Vogt has moved to dismiss arguing: 1) Plaintiff cannot base her negligence claim on Defendant Vogt's violation of the reporting statutes; 2) Plaintiff did not adequately plead her claim of breach of contract; 3) Plaintiff did not adequately plead a violation of the 14th Amendment by Defendant Vogt; 4) Defendant Vogt is immune from suit; 5)

the Court is precluded from hearing Plaintiff's action by the *Younger* and *Rooker-Feldman* doctrines because of the tangential nature of the Divorce Action; and, 6) Plaintiff cannot seek emotional damages in this action.

Defendant's motion fails for at least six (6) reasons.  **First**, while not creating a private right of action, the child abuse reporting statutes can nevertheless form the basis of a claim for negligence *per se*.  **Second**, Plaintiff pled the elements of breach of an implied contract against Defendant Vogt at this early pleading stage.  **Third**, Plaintiff sufficiently asserted a violation of the 14th Amendment under a danger creation theory.  **Fourth**, Defendant Vogt is not immune or privileged from her out-of-court failings and omissions that go outside the scope of her appointment in the Divorce Action.  **Fifth**, Plaintiff is suing Defendant Vogt for damages related to her failure to, among other failures and omissions, report father's child abuse.  Plaintiff's claims have nothing to do with overturning orders entered by the Divorce Action.[1]  Even if Defendants were discharged in the Divorce Action, Plaintiff would still be bringing this action.  **Sixth,** Plaintiff has sufficiently alleged a physical injury with her emotional damages and therefore can seek the same.  This Court should deny Defendant Vogt's motion.

## SUMMARY OF ALLEGATIONS

The following facts from Plaintiff's Amended Complaint set out Defendants' negligence, breach of contract, and alternatively, constitutional violations:

1.     On or around July 12, 2018, the Court in the Divorce Action appointed Defendant Welsh to act as Guardian *Ad Litem* for the minor children and act in their best interest, and Plaintiff compensated her for such work. *See* Dkt. # 13, at ¶ 10.

---

[1]     Plaintiff did not bring an action against the Judge or County because she is not seeking to overturn the orders in this Court.  She claims damages for Defendants' failures which placed Plaintiff's minor children in a situation where they were, and continue to be, exposed to prolonged physical and/or sexual and/or emotional abuse and neglect.

2.      The same Tulsa County District Court adopted the recommendations of Defendant Welsh and appointed Defendant Vogt to act as a licensed therapist for Plaintiff's minor child, A.R.V., and to protect A.R.V.'s best interest. *See id.* at ¶ 11.

3.      On July 18, 2018, the Court in the Divorce Action appointed Defendant Vogt as a therapist for A.R.V. only.  *See id.* at ¶ 25.

4.      Plaintiff compensated Defendant Vogt for her services provided to A.R.V.  *Id.*

5.      Defendants knew, or should have known, that Plaintiff's young children were being sexually and/or physically and/or emotionally abused by their father. *See id.* at ¶ 12.

6.      Defendants negligently delayed their pursuit of the abuse allegations causing further delay and harm to the minor children. *See id.* at ¶ 13.

7.      Upon information and belief that will be confirmed through discovery, the cause for Defendants' delay was due, in part, to increase their own financial benefits. *See id.* at ¶ 14.

8.      Defendant Vogt had "prolonged knowledge" of ongoing child abuse and knowingly and willfully failed to report suspected child abuse as required by Title 10A of the Children and Juvenile Code. *See id.* at ¶ 15.

9.      On August 14, 2018, Plaintiff informed Defendant Vogt of suspected child abuse by the father, including physical abuse with injuries, neglect due to substance abuse, substance abuse (including alcohol, cocaine, acid, marijuana, pain medication, cough medicine, and ecstasy) and exposure to domestic violence. Plaintiff provided Defendant Vogt a copy of Emergency Protective Order PO-2018-1757.  Plaintiff informed Defendant Vogt of a police report filed after the father threatened A.R.V. during a supervised visitation. *See id.* at ¶ 16.

10.      During eleven separate therapy sessions with A.R.V., A.R.V. disclosed to Defendant Vogt that his father was physically abusive. *See id.* at ¶ 17.

11.      On March 16, 2019, during a therapy session with A.R.V., A.R.V. disclosed to Defendant Vogt that his father was drinking and driving the minor children in his vehicle. *See id.* at ¶ 18.

12.      On August 16, 2019, the Assistant District attorney made a DHS referral on behalf of the children. *See id.* at ¶ 19.

13.      On August 26, 2019, during a forensic interview at the Child Abuse Network, A.R.V. disclosed physical abuse by his father.  P.F.V. also disclosed sexual abuse by her father. *See id.* at ¶ 20.

14.      On November 2, 2020, Defendant Vogt testified that A.R.V. disclosed during therapy sessions that his father hit him, hit his mom, hit him in the stomach, and pulled his hair. Defendant Vogt testified that she is a mandatory reporter and yet she did not make a DHS report regarding A.R.V. or P.F.V. *See id.* at ¶ 21.

15.     Defendant Vogt failed to obtain written consent to provide treatment for all the minor Vietti children as required by the State Board of Behavioral Health. *See id.* at ¶ 22.

16.     On February 13, 2019, April 30, 2019, and September 25, 2019, Defendant Vogt provided therapy/forensic services to P.F.V. without written consent or court order. *See id.* at ¶ 23.

17.     Defendant Vogt failed to follow the State Board of Behavioral Health guidelines regarding forensic services that the "results would be furnished to a trier of fact or decision maker, must be kept confidential and cannot be utilized in the formation or publication of an opinion by the candidate or licensee."  Defendant Vogt provided forensic services by interviewing the children, questioning the truthfulness of the children, interfering in the Department of Human Services Child Welfare/Tulsa Police Department investigation, and providing an opinion to the Court regarding the credibility of the children.  *See id.* at ¶ 24.

18.     On August 26, 2019, A.R.V. and P.F.V. were interviewed at the Child Abuse Network.  A.R.V disclosed that his father hit him, kicked him, drinks, and yelled at him.  P.F.V. disclosed that her father touched her private parts.  P.F.V. described that her clothes were off, his clothes were on, and that it happened in their living room. *See id.* at ¶ 26.

19.     On August 26, 2019, OKDHS Child Welfare Specialist, Keegan Eshleman, filed two police reports:  T19011496 Lewd Molestation/Acts/Proposals to a child under 16 and T19011497 Child Abuse. *See id.* at ¶ 27.

20.     On August 28, 2019, DHS investigator Sydney Baldwin testified that Defendant Vogt was interviewed as a collateral witness and had no child abuse concerns. As a result, DHS did not conduct an investigation and screened out referrals. *See id.* at ¶ 28.

21.     On September 25, 2019, Defendant Vogt interviewed P.F.V. regarding the sexual abuse allegations that P.F.V. disclosed at the Child Abuse Network during a forensic interview. Defendant Vogt interviewed the child without a court order or written consent in the middle of a criminal and child welfare investigation. *See id.* at ¶ 29.

22.     Defendant Vogt failed to follow the State Board of Behavioral Health guidelines regarding dual roles and relationships. "LPCs shall not knowingly enter into a dual relationship and shall take any necessary precautions to prevent a dual relationship from occurring." *Id.* at ¶ 30.

23.     Defendant Vogt provided forensic services by interviewing A.R.V. and P.F.V. approximately thirty (30) days after forensic interviews were conducted at the Child Abuse Network.  *See id.* at ¶ 31.

24.     Defendant Vogt refuted the children's abuse disclosures to DHS even though Defendant Vogt had not seen the children in months. Defendant Vogt falsely presented herself as a therapist for minor P.F.V. to DHS. *See id.* at ¶ 32.

25.     Defendant Vogt failed to follow the State Board of Behavioral Health guidelines regarding providing counseling services for a client. "LPCs who provide counseling services for a client shall only provide fact witness testimony." "Fact witness testimony by LPCs shall not

include opinions or recommendations pertaining to matter subject to a decision by the Court, in forensic matters involving that client, unless otherwise required by law or court order. *Id.* at ¶ 33.

26.     Defendant Vogt provided an opinion to the child welfare investigator, Sydney Baldwin. *See id.* at ¶ 34.

27.     Defendant Vogt failed to comply with the State Board of Behavioral Health guidelines of Professional Conduct by falsifying a client's record.  *See id.* at ¶ 35

28.     On August 14, 2018, Plaintiff signed a Financial Agreement Form and received a copy of the form from Defendant Vogt. *See id.* at ¶ 36.

29.     On June 12, 2020, Defendant Vogt emailed counsel and the guardian *ad litem* an altered and forged intake contract for the minor, A.R.V.  The subpoena portion of the Financial Agreement Form is slashed thru and initialed by Defendant Vogt. *See id.* at ¶ 37.

30.     Defendant Vogt failed to follow best practice guidelines in forensic interviewing as established by the National Children's Advocacy Center, where Defendant Vogt was trained as a forensic interviewer.  *See id.* at ¶ 38.

31.     Throughout her involvement, Defendant Vogt communicated her findings and opinions to Defendant Welsh in a manner and to an extent that will be shown through discovery. *See id.* at ¶ 39

32.     The allegations repeatedly made by the Vietti children regarding sexual and/or physical and/or emotional abuse were known to Defendant Welsh, and Defendant Welsh not only disregarded these allegations, but she also went above and beyond to make sure the abusive father obtained as much visitation with the children as possible. *See id.* at ¶ 40.

33.     Upon information and belief that will be confirmed through discovery, Defendants were engaged in a scheme with the counsel for the father in the Divorce Action to seek appointment of Defendant Welsh as Guardian *ad litem* and Defendant Vogt as custody coordinator.  *Id.* at ¶ 41.

34.     Upon information and belief that will be confirmed through discovery, the goal of this scheme between counsel for the father in the Divorce Action and Defendants was for the Defendants to ultimately advocate on the father's behalf in the Divorce while financially benefitting from Plaintiff. *See id.* at ¶ 42.

35.     Upon information and belief that will be confirmed through discovery, Defendants furthered their scheme with counsel for the father in the Divorce Action by deliberately ignoring and disregarding the repeated allegations made by the Vietti children regarding sexual and/or physical and/or emotional abuse by the Vietti children's father. *See id.* at ¶ 43.

36.     Upon information and belief that will be confirmed through discovery, Defendants Welsh and Vogt exceeded the scope of their duties and responsibilities as Guardian *ad litem* and therapist respectively by:

a. Engaging in a scheme to financially benefit themselves at the expense of Plaintiff and/or her minor children by deliberately delaying and/or ignoring the abuse sustained by the minor children at the hands of their father.

b. Advocating, representing, or attempting to represent the interests of the father in the Divorce Action.

c. Deliberately failing to report abuse of the children by their father in contravention of state law and their duty to act for the best interests of the minor children.

d. As a result of the Defendants' conduct, the parties have sustained significant damages. *See id.* at ¶ 44.

### STANDARD OF REVIEW

Federal pleading rules require only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading states a claim for relief where the allegations, taken as true, set forth a claim that is "plausible on its face." *Id*. at 570. In making that determination, the Court must accept all well-pleaded allegations as true, even if doubtful, and must construe the allegations most favorably to Plaintiff. *See, e.g., Massachusetts Bay Ins. Co. v. Langager,* No. 16-CV-685-JED, 2017 WL 3586862, *1 (N.D. Okla. Aug. 18, 2017) (citing *Twombly,* 550 U.S. at 555). A claim is "facially plausible" if it has "enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vogt v. City of Hays, Kansas*, No. 15-3266, 2017 WL 34455, *2 (10th Cir. Jan. 4, 2017), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### ARGUMENT AND AUTHORITIES

**I. Plaintiff Is Permitted to Bring a Negligence Claim Against Defendant Vogt for Vogt's Failure to Report Child Abuse as Mandated by Oklahoma Law.**

Defendant Vogt first argues that Plaintiff cannot bring an action against Defendant Vogt for violation of Oklahoma's Child Abuse reporting statute, 10A O.S. § 1-2-101, because the statute

does not create a private of action.  However, Defendant Vogt misunderstands Plaintiff's action.

Plaintiff is not bringing a claim for liability under the statute; instead, Plaintiff is alleging

negligence *per se* for Defendant Vogt's failure to report under the statute.  Further, Plaintiff is

alleging further breaches of duty other than Defendant Vogt's failure to report.  The Court should

therefore deny Defendant Vogt's motion.

Under section 1-2-101(B)(1), persons, like Defendant Vogt, have a statutory duty to report

child abuse, like the abuse sustained by Plaintiff's minor children:

> Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services. Reports shall be made to the hotline provided for in subsection A of this section. Any allegation of abuse or neglect reported in any manner to a county office shall immediately be referred to the hotline by the Department.

While Oklahoma's reporting statute imposes criminal liability for failure to report, the statute is

silent on a private right of action.[2]  Because there is no private right of action, Defendant Vogt

incorrectly relies on *Paulson v. Sternlof*, 2000 OK CIV APP 128, 15 P.3d 981, for the proposition

that Plaintiff cannot bring an action for failure to report.  However, in *Paulson*, plaintiff brought

her claim under the statutory scheme itself; they were not negligence claims based on violations

of the statute.

The Western District of Oklahoma distinguished *Paulson* and held that a Plaintiff could

bring a negligence *per se* action for a Defendant's failure to report as mandated under the child

abuse reporting statutes.  *See T.A. v. Moore Public Schools*, No. CIV-06-858-C, 2008 WL

11417305 (W.D. Okla. April 23, 2008). In *T.A.*, plaintiff brought a negligence claim against certain

---

[2]      *See, id.* at § 1-2-101(C) ("Any person who knowingly and willfully fails to promptly report suspected child abuse or neglect or who interferes with the prompt reporting of suspected child abuse or neglect may be reported to local law enforcement for criminal investigation and, upon conviction thereof, shall be guilty of a misdemeanor. Any person with prolonged knowledge of ongoing child abuse or neglect who knowingly and willfully fails to promptly report such knowledge may be reported to local law enforcement for criminal investigation and, upon conviction thereof, shall be guilty of a felony.").

school employees for failing to report the abuse of a fellow employee under a prior version of the

mandatory reporting law.[3]  Defendants moved for summary judgment on the claim, citing *Paulson*.

The Western District disagreed with defendants and held that plaintiff could bring a negligence

*per se* claim for violation of the statute:

> Negligence *per se is* based on the violation of a duty imposed by statute.

>> If ... there are criminal or regulatory statutes which delineate the defendants [sic] conduct, courts may adopt the conduct required by the statutes as that which would be expected of a reasonably prudent person–providing courts believe the statutorily required conduct is appropriate for establishing civil liability. When courts adopt the statutory standard for a cause of action for negligence, the violation of the statute is said to be negligence per se. The violation of a statute constitutes negligence per se if the other elements of negligence are present. To establish negligence per se on the basis of a statutory violation the party must establish that: 1) the injury was caused by the violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute.

>> *Busby v. Quail Creek Golf & Country Club*, 1994 OK 63, ¶ 6, 885 P.2d 1326, 1329 (footnotes omitted).

> The Oklahoma Court of Appeals, without further explanation, has held that "the child abuse reporting statutes do not create a private right of action.... There is no provision ... for civil liability." *Paulson v. Sternlof*, 2000 OK CIV APP 128, ¶ 13, 15 P.3d 981, 984. **However, a claim for negligence per se does not necessarily depend on a legislature's grant of a private right of action.** 57A Am. Jur. 2d Negligence § 685. Because § 7103 imposes more than a general duty and specifically requires anyone with reason to believe that a child is a victim of abuse to contact authorities, the Court finds that it can support a claim for negligence per se. Therefore, the District's request for summary judgment on the negligence per se claim is denied.

*T.A.*, 2008 WL 11417305, at \*6-\*7 (emphasis added).  Like the *T.A.* Court, this Court should allow

Plaintiff to bring her negligence *per se* claim for Defendant Vogt's violation of 10A O.S. § 1-2-

101.

---

[3]     The statute at issue in *T.A.*, 10 O.S. § 7103(A)(1), sets out that a teacher or person:

having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect, shall report the matter promptly to the Department of Human Services. Such reports may be made by telephone, in writing, personally or by any other method prescribed by the Department. Any report of abuse or neglect made pursuant to this section shall be made in good faith.

Further, Plaintiff has not based her negligence claims solely on Defendants' failure to report. Plaintiff also alleges other failures and omissions.  For example, that: 1) Defendant Vogt provided therapy without Plaintiff's consent, *see* Dkt. #13, ¶ 23; 2) Defendant Vogt engaged in inappropriate dual roles as therapist and forensic interviewer of Plaintiff's minor children, *see id.* at ¶¶ 30-31; 3) Defendant Vogt inappropriately provided opinion rather than fact testimony in violation of professional standards, *see id.* at ¶¶ 33-34; Defendant Vogt falsified the records of Plaintiff's minor child.  Even if the Court found that the reporting statute could not form the basis of Plaintiff's negligence claim, Plaintiff has sufficiently alleged other failures or omissions such that the Court should allow her negligence claim to move forward.

## II.    Plaintiff Sufficiently Alleged that Vogt Breached Her Contract With Plaintiff.

Under Oklahoma law, to assert a claim for breach of contract, Plaintiff must plead: 1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach. *Cares v. Integris Health, Inc.,* 2018 OK 9, ¶ 11, 412 P.3d 98.

Defendant Vogt's specious argument is limited to the contract formation element of contract formation.  As the Amended Complaint makes clear, **Defendant Vogt and Plaintiff formed a contract**.  Plaintiff alleged Defendant Vogt entered into a contract with Plaintiff and became contractually obligated to protect the best interest of Plaintiff's minor children. *See* Dkt. #13, at ¶ 47.  Further, Plaintiff compensated Defendant Vogt for her services. *See id.* at ¶ 11.  Even in the absence of an express contract, Plaintiff's act of paying Defendant Vogt for her therapist work to protect the best interest of Plaintiff's minor children can form the basis of an implied contract.  As the Tenth Circuit (applying Oklahoma law) has held:

> A contract consists not only of the agreements which the parties have expressed in words, but also of the obligations which are reasonably implied...." *Burk v. K–Mart Corp.*, 770 P.2d 24, 26-27 (Okla.1989) (quoting *Wright v. Fidelity & Deposit Co. of Md.*, 176 Okla. 274, 54 P.2d 1084, 1087 (1935)); *see also* Okla. Stat. Ann. tit. 15, § 131 (West 1996) ("A

contract is either express or implied"); Okla. Stat. Ann. tit. 15, § 133 (West 1996) ("An implied contract is one, the existence and terms of which are manifested by conduct.").

*Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1461 (10th Cir. 1997). Plaintiff's allegations are sufficient to allege a contract, particularly at this early pleading stage. *See id*. ("In Oklahoma, 'normally the issue of whether an implied contract exists is factual.'") (quoting *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, 783 (Okla.1995). Therefore, the Court should deny Defendant Vogt's Motion to Dismiss.

## III.    Plaintiff Has Sufficiently Alleged a Claim Under Section 1983.

In her Amended Complaint, Plaintiff has alleged, in the alternative, that the Defendants' violated her children's substantive due process rights by creating a dangerous situation whereby Defendant Vogt ensured placement of Plaintiff's children in the custody of a physically and sexually abusive monster – the children's father.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. The Clause has a substantive component "barring certain government actions regardless of the fairness of the procedures used to implement them," *Daniels v. Williams,* 474 U.S. 327, 331 (1986). The substantive due process clause prevents government officials "from abusing [their] power, or employing it as an instrument of oppression" *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189,196 (1989) (internal quotation marks omitted). Section 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quoting 42 U.S.C. § 1983).

As a general rule, state actors are "only liable under the Due Process Clause for their own acts and not for private violence, . . . there are two recognized exceptions to this rule: (1) the special

relationship doctrine; and (2) the 'danger creation' theory." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (citing *DeShaney*, 489 U.S. at 196-97). "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Id.* (citing *DeShaney* at 199-200). Under the danger creation theory, a state actor will be liable "if it created the danger that harmed that individual." *Id.*

In this case, Plaintiff alleges the Defendants violated her children's rights under a "state created danger theory." The "danger creation" theory is clearly established in the Tenth Circuit. *See Currier v. Doran*, 242 F.3d 905, 924 (10th Cir. 2001) (quoting *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) ("In *Armijo* this court determined that 'danger creation jurisprudence was clearly established as a matter of law' by late 1994.")); *see also Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) ("[S]tate officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm.")

The Tenth Circuit articulated a six-point test to establish state-created danger:

> (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *Ruiz v. McDonnell*, 299 F.3d at 1182-83)). Defendant Vogt only focuses on two elements – 1) that Defendant Vogt was not a state actor that created the danger; and 2) her conduct does not shock the conscience.[4]

---

[4]    While Plaintiff limits her brief to the two elements argued by Defendant Vogt, Plaintiff's allegations satisfy the other four elements. Plaintiff's children are part of a limited and definable group of kids who have had a guardian-ad-litem and therapist appointed for them by a Court in a custody case. *See, e.g., T.D.*, 868 F.3d at 1229 (children were part of a definable group of children the state has removed from their natural parent and taken into state custody and placed with the other natural parent). Defendant Vogt's

**1.   Defendant Vogt Created the Danger and Increased the Children's Vulnerability.**

The first element for danger creation is that a state actor created the danger or increased Plaintiff's vulnerability.  That element is easily satisfied here.

Defendant Vogt incorrectly argues that she is not a state actor and did not act jointly with a state actor.  The Tenth Circuit has applied four different tests to determine whether a private individual may be subject to liability under § 1983 as a state actor: the nexus test, the symbiotic relationship test, the joint action test, and the public function test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). The nexus test requires a "sufficiently close nexus between the government and the challenged conduct" and, in most cases, renders a State liable for a private individual's conduct "only when [the State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1448 (quotations omitted). The symbiotic relationship test asks whether the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *Id.* at 1451 (quotations omitted). The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453. Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State...." *Id.* at 1456 (quotations omitted).

In this case, Plaintiff has clearly pled in the alternative that Defendants Vogt and Welsh were state actors under the symbiotic relationship test and the public function test.  The Court

---

conduct also put Plaintiff's minor children at substantial risk of serious, immediate, and proximate harm by failing to report and disregarding the father's abuse of the minor children.  *See, id.* (social worker put minor at risk of harm by placing child with father despite sex register status and history of abuse).  Similarly, the risk to Plaintiff's children was obvious and known at intake, and by failing to report and intentionally telling DHS she was not concerned with those risks and concerns, Defendant Vogt acted recklessly.  *See, id.* (withholding concerns about known abuse by social worker showed the social worker acted recklessly).

appointed Defendants Vogt and Welsh to assist the Court in performing the state's function of determining the custody of Plaintiff's children. The state, *via* the Court in the Divorce Action, put itself in a position of interdependence with the Defendants in determining custody. Similarly, Defendants were assisting the District Court in performing one of the state's public functions – determining custody. The Court made Defendants "officers of the Court with the authority to protect and foster the best interests of the minor children." *See* Order Appointing Guardian *Ad Litem*, attached hereto as Exhibit 1. Further, the Court ordered that Defendant Welsh owed "her primary duty to the Court and not to the minor children alone." *Id.* Plaintiff has clearly alleged that Defendants were state actors.[5]

It is evident as well that Defendant Vogt created the danger. A case on point is *T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017). In *T.D.*, on appeal from denial of defendant's summary judgment, the Tenth Circuit held that a social worker created the danger in placing a minor child with the child's biological father – a registered sex offender who sexually and physically assaulted the minor. In *T.D.,* the social worker was aware of multiple instances of father's abuse and violence, including allegations of abuse of other children, domestic violence, and sex offender registration. *Id.* at 1227-28. Additionally, the social worker was aware that the father abused the minor child at issue. *See id.* Despite this knowledge, the social worker recommended that minor be placed with and remain in father's custody. Further, the social worker failed to investigate the abuse claims. *See id.* at 1228. The Tenth Circuit held that the social worker created the danger:

---

[5]       Plaintiff anticipates that Defendants will cite *Meeker v. Kercher*, 782 F.3d 153, 155 (10th Cir. 1986), for the proposition that a guardian-ad-litem cannot be a state actor. However, the Tenth Circuit made that determination in *Meeker* because in that case, the guardian-ad-litem assumed no "obligation to the mission of the state. . . but owe[d] his or her undivided loyalty to the minor, not the state." *Id.* In this case, however, the Court in the Divorce Action, in appointing Defendants Welsh and Vogt, specifically informed the Defendants and parties that Defendant Vogt "owe[d] her primary duty to the Court and not to the minor children alone." Ex. 1. By ordering Defendants' duty to the Court and not solely to Plaintiff's minor children, the Court removed any impediment to this Court finding that Defendants were state actors.

> By (1) recommending that [minor] be placed and later recommending that [minor] remain in [father]'s temporary custody, (2) intentionally removing from her report to the juvenile court her knowledge and concerns regarding [father]'s fitness as a caretaker, and (3) failing to investigate evidence of potential abuse, Ms. Patton helped create or increase [minor]'s vulnerability to the danger posed by [father].

*Id.* at 1229.

In this case, Plaintiff alleged nearly identical behavior by Defendants Vogt and Welsh. During an intake with Plaintiff, Plaintiff informed Defendant Vogt of suspected child abuse by the father, including physical abuse with injuries, neglect due to substance abuse, substance abuse (including alcohol, cocaine, acid, marijuana, pain medication, cough medicine, and ecstasy) and domestic violence. Plaintiff provided Defendant Vogt a copy of Emergency Protective Order PO-2018-1757. Plaintiff informed Defendant Vogt of a police report filed after the father threatened A.R.V. during a supervised visitation. During eleven separate therapy sessions with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed that his father was physically abusive. On March 16, 2019, during a therapy session with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed the father was drinking and driving the minor children in his vehicle. Yet, she never reported father's abuse to the DHS. When the DHS investigated the abuse after being alerted by other parties, Defendant Vogt actually **expressed no concerns about abuse,** effectively ending the DHS investigation. Further, despite the volume of abuse allegations, Defendant Vogt ensured that father receives as much visitation and custody as possible. Defendant Vogt placed the kids in danger and increased the minor children's vulnerability to the danger. *See T.D.,* 868 F.3d at 1229.

## 2. DEFENDANTS' CONDUCT, AS ALLEGED, WAS CONSCIENCE SHOCKING.

Defendant Vogt speciously argues that her behavior as alleged by Plaintiff was at best negligence – not conscience-shocking.   Defendant Vogt's argument is counter to Plaintiff's allegations and Tenth Circuit guidance.

To demonstrate that Defendants' actions were "conscience-shocking," Plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 575. "The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct." *Id.* at 574. While the question of whether a defendant's action "shocks the conscience" is a question of law, a close examination of the evidence is required before the Court can make such a determination. *Kerns v. Independent School Dist. No. 31 of Ottawa County*, 984 F. Supp. 2d 1144, 1151 (N.D. Okla. 2013). On a motion to dismiss, the relevant question is whether the complaint alleges facts that "could be conscience shocking, depending, of course, on further context provided by discovery." *Currier*, 242 F.3d at 920; *see also Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008) (quoting *Armijo*, 159 F.3d at 1264) ("Viewed in total, [plaintiff] has described conduct that could be 'construed as conscience-shocking, depending on context' after the facts are fully developed.").

Again, Defendant Vogt's conduct is near identical to the social worker's conduct in *T.D., supra*.  In *T.D.* the Court held:

> that social worker's conduct, viewed "in total" and in T.D.'s favor, was conscience shocking in light of:
>
> > (1) her withholding of certain information about [father]'s criminal history;
> > (2) her withholding of her concerns about [father] from her September 7, 2010, June 13, 2011, and August 25, 2011 reports to the juvenile court for fear of being fired;

(3) her awareness of and failure to investigate evidence of potential abuse, including T.D.'s report that [father] had hit him with a wooden mop and school officials' reports that he had spent significant time in the school nurse's office complaining of body aches and appearing fearful of his father; and

(4) her responsibility for T.D. being placed and remaining in [father]'s home.

Social worker's conduct significantly exceeded "ordinary negligence" or "permitting unreasonable risks" and rose to "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Ruiz*, 299 F.3d at 1184 (quotations omitted); *see also Currier*, 242 F.3d at 919-20.

*T.D.,* 868 F.3d at 1229.

In this case, and at this stage, Plaintiff has pled that Defendant Vogt's conduct, viewed in total, shocks the conscience.  As discussed *supra,* during intake with Plaintiff, Defendant Vogt was informed of suspected child abuse by the father, including physical abuse with injuries, neglect due to substance abuse, substance abuse (including alcohol, cocaine, acid, marijuana, pain medication, cough medicine, and ecstasy) and domestic violence.  Defendant Vogt was provided a copy of Emergency Protective Order PO-2018-1757 and was informed of a police report filed after the father threatened A.R.V. during a supervised visitation.  During eleven separate therapy sessions with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed that his father was physically abusive.  On March 16, 2019, during a therapy session with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed the father was drinking and driving the minor children in his vehicle. **Yet, she never reported father's abuse to DHS and, when DHS investigated the abuse after being alerted by other parties, actually expressed no concerns about abuse, effectively ending DHS's investigation.  Further, despite the volume of abuse allegations, Defendant Vogt ensured that father receive as much visitation and custody as possible.**  Like the social worker in *T.D.*, Defendant's conduct shocks

the conscience.  Plaintiff sufficiently pled a § 1983 claim; therefore, this Court should deny Defendant Vogt's motion.

### 3. DEFENDANT VOGT IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendant Vogt next argues that she is entitled to qualified immunity on Plaintiff's 1983 claim. Defendant Vogt mistakenly contends that Plaintiff has not alleged any constitutional violation and that the constitutional rights of Plaintiff's minor children were not clearly established. Plaintiff has sufficiently alleged a constitutional violation, *see supra,* and the childrens rights were clearly established when Defendant Vogt violated them.

"Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D.,* 868 F.3d at 1220 (citing *Gutierrez v. Cobos,* 841 F.3d 895, 900 (10th Cir. 2016)). When determining whether Defendant Vogt is entitled to qualified immunity at this stage, this Court must decide whether Plaintiff has "allege[d] sufficient facts that show – when taken as true – the defendant plausibly violated [Plaintiff's children's] constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). [6] Here, Plaintiff has alleged "sufficient facts that show—when taken as true" that Defendant Vogt "plausibly violated [the minor children's] constitutional rights, which were clearly established at the time of violation." *Id*.

---

[6]      *See also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). ("[Q]ualified immunity defenses are typically resolved at the summary judgment stage…."); *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion" -- as the Individual Defendants have here -- "subjects the defendant to a more challenging standard of review than would apply on summary judgment.").

### A.  UNDERLYING CONSTITUTIONAL VIOLATION

As discussed at length *supra*, Plaintiff has plead more than sufficient facts to plausibly allege that Defendant Vogt created the danger to Plaintiff's minor children and therefore violated their known constitutional.  *See supra.*

### B.  THE LAW WAS CLEARLY ESTABLISHED IN 2018.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D.,* 868 F.3d at 1220.   However, there is no need that "the very action[s] in question [have] previously been held unlawful." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377- 78 (2009). "Although there need not be a 'case directly on point,' . . . '[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it.'" *T.D.,* 868 F.3d at 1220 (quoting *City & Cty. of San Francisco v. Sheehan*, ____ U.S. _____, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015))

In determining whether a constitutional right is "clearly established" for qualified immunity:

> The Supreme Court has held "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). As this court has pointed out, "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir.2007) (quotations omitted).

*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

The Tenth Circuit has held that a reasonable person in Defendant Vogt's "shoes would have understood that she was violating [Plaintiff's children's] constitutional right by creating or increasing [their] vulnerability to the danger posed by [their father]." *T.D.,* 868 F.3d at 1231. This case tracks similar cases where the Tenth Circuit has found a plaintiff's constitutional rights have been violated.  For example, in *Currier*, defendant failed to investigate evidence of potential abuse, including bruises on the children, general allegations of abuse, and a "very specific accusation" of abuse and (2) recommended to the court that [father] assume legal custody. 242 F.3d at 919.  Those facts supported the court's conclusions that defendant (1) created or increased the children's vulnerability to the danger, (2) placed the children at an obvious risk of serious, immediate, and proximate harm, and (3) recklessly and consciously disregarded that risk.  *Id.* at 920.

Similarly, in *T.D.,* defendant:

(1) failed to investigate evidence of abuse, including a "very specific" report of abuse . . . and other indicia of abuse . . . , and (2) recommended to the juvenile court that [father] receive and keep temporary custody of [minor]. Accordingly, based on the facts of *Currier*, a reasonable official in [defendant]'s shoes would have understood that she (1) created or increased [minor]'s vulnerability to the danger, (2) placed [minor] at an obvious risk of serious, immediate, and proximate harm, and (3) recklessly and consciously disregarded that risk.

868 F.3d at 1231.

In this case, like the *Currier* and *T.D.* defendants, Defendant Vogt (1) failed to investigate and report evidence of abuse despite knowledge of such abuse, including "very specific" reports of abuse by Plaintiff's children, and (2) provided opinions to DHS and others ensuring that DHS investigation into father's abuse were ended and ensuring that an abusive monster received as much visitation and custody as possible.   Accordingly, based on the facts of *Currier* and *T.D.*, a reasonable official in Defendant Vogt's shoes would have understood that she (1) created or increased the children's vulnerability to the danger, (2) placed the children at an obvious risk of

serious, immediate, and proximate harm, and (3) recklessly and consciously disregarded that risk

As has been shown above, the conduct alleged against Defendant Vogt, neglect of society's most

vulnerable and exposing them to real harm for *convenience,* and can reasonably be said to shock

the conscience. *Currier*, 242 F.3d at 922 ("a reasonable state official would have known in 1993

and 1994 that reckless, conscience shocking conduct that altered the status quo and placed a child

at substantial risk of serious, immediate, and proximate harm was unconstitutional.").

Defendant Vogt cannot receive qualified immunity, and this Court should deny Defendant

Vogt's motion.

### IV.    Defendant Vogt is Not Entitled to Judicial Immunity or Immunity as a Guardian Ad Litem

Though not a guardian *ad litem*, Defendant Vogt next argues that she is entitled to the same

immunity as a guardian *ad litem*.  However, Defendant Vogt fails to inform the Court that, while

a guardian ad litem has a presumption of immunity for their acts, that presumption may be rebutted.

"There are limits to the scope of the immunity for a GAL. Not every act performed by a person

with that title is immunized. For example, there is no immunity for acts taken in the 'clear absence

of all jurisdiction.'" *Dahl v. Charles F. Dahl, M.D., P.C.*, 744 F.3d 623, 630 (10th Cir. 2014).

There is no "blanket immunity for any and all actions taken by the guardian. Rather, the guardian

remains liable for actions beyond the scope of her duties." *Falk v. Sadler,* 533 S.E.2d 350, 353

(S.C. 2000).  "**It is the nature of the acts, not simply the status of the defendant as a guardian

ad litem**, that determines the availability of immunity for the challenged acts and the extent of

protection afforded by that immunity." *Id.* at 353-54 (emphasis added).

In a case with similar allegations to this case, the South Carolina Supreme Court held that

the district court should not have dismissed claims against a guardian *ad litem* when the complaint

alleged that the guardian *ad litem* went beyond the scope of her appointment.  In *Falk*, the court

acknowledged that a recommendation by a guardian *ad litem* regarding custody, "no matter how disagreeable," will not sustain an action against a guardian *ad litem*. *Id.* at 354. However, the court found that the plaintiff went beyond disagreement with a custody recommendation in the complaint:

> [plaintiff] alleges in her complaint that [guardian ad litem] exceeded the scope of her guardian ad litem duties in several ways. In particular, [plaintiff] alleges that [guardian ad litem]: (1) "exceed[ed] the scope of her Guardian ad Litem duties and responsibilities by advocating, representing or attempting to represent the interests of [plaintiff] and [husband] in issues involving the legal separation of [plaintiff] and [husband];" (2) "exceed[ed] the scope of her duties and responsibilities by interfering with issues between [plaintiff] and [husband] regarding spousal support;" (3) committed misconduct "[i]n attempting to negotiate spousal support for [plaintiff] without authorization in exchange for physical separation of her minor clients from one another;" (4) committed misconduct "[i]n advocating and acting under an inherent conflict of interest in the performance of legal representation of the best interest of her clients, the minor children;" and (5) committed misconduct "[i]n undertaking the dual role of Guardian ad Litem and providing legal advice to or representation of [husband] as to legal matters between [plaintiff] and [husband]."

*Id.* With these allegations, the court determined: "At this point in the proceedings, we find the grant of a judgment on the pleadings, before discovery has been fully completed, is premature. [plaintiff]'s complaint contains several allegations which, if true, show [guardian ad litem] acted outside the scope of her duties as guardian ad litem." *Id.*; *see also Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 52 (1991) ("[A] limited factual inquiry is necessary to determine the nature of [the guardian's] appointment and the extent to which he functioned within the scope of that appointment.").

Like *Falk*, this Court should not dismiss Plaintiff's claims at this early stage before discovery is concluded.  Plaintiff has asserted several allegations that Defendants conduct went beyond the scope of their respective appointments:

> Defendants Welsh and Vogt exceeded the scope of their duties and responsibilities as Guardian *ad litem* and therapist respectively by:

      a.      Engaging in a scheme to financially benefit themselves at the expense of Plaintiff and/or her minor children by deliberately delaying and/or ignoring the abuse sustained by the minor children at the hands of their father.

      b.      Advocating, representing, or attempting to represent the interests of the father in the Divorce Action.

      c.      Deliberately failing to report abuse of the minor children by their father in contravention of state law and their duty to act for the best interests of the minor children.

*See* Dkt. 13, at ¶ 44. Specific to Defendant Vogt, Plaintiff alleged Plaintiff informed Defendant Vogt about the child abuse, the domestic violence, and the substance abuse by the children's father. *See id.* at ¶ 16. Plaintiff's children also informed Defendant Vogt on numerous occasions about abuse. *See id.* at ¶¶ 17, 18, 21. Plaintiff alleges that despite this, Defendant Vogt did nothing and ultimately shut down a DHS investigation. *See id.* at ¶ 28. Additionally, Defendant Vogt interviewed P.F.V. without consent and court order in the middle of a criminal and DHS investigation. *See id.* at ¶ 29. Defendant Vogt also violated her professional duties by: (1) taking a dual role as counselor and forensic interviewer, and, (2) provided opinion testimony rather than purely fact testimony. Finally, Plaintiff alleged that Defendant Vogt (and Defendant Welsh) ignored the abuse and engaged in a scheme to delay custody determination to financially benefit themselves and *de facto* advocate for the children's abusive father. *See id.* at ¶¶ 40-44. The allegations, "if true, show [Defendants] acted outside the scope of [their] duties. . ." *Falk,* 533 S.E.2d at 354. Like *Falk,* this Court should find that a motion to dismiss "before discovery has been fully completed, is premature." Therefore, this Court should deny Defendant Vogt's motion.[7]

---

[7]     Defendant Vogt also claims she is immune based on *Hartley v. Williamson*, 2001 OK CIV APP 6, 18 P.3d 355. However, *Hartley* is not applicable. In *Hartley*, plaintiff was attempting to sue a court-appointed doctor **solely based on his testimony** in the underlying custody case. *See id.* at ¶ 15 ("Although couched as claims for negligence, intentional infliction of emotional distress, deceit and conspiracy to commit abuse of process, each claim is based on the allegation that Doctor <u>testified</u> against Mother and Daughter in the emergency ex-parte hearing") (emphasis in original). In this case, Plaintiff is not suing

**V.     The *Younger* and *Rooker-Feldman* Doctrines Do Not Apply**

Defendant next argues that the Court should abstain from hearing this case under the *Younger* and *Rooker-Feldman* doctrines.  However, Plaintiff is suing Defendant Vogt for damages related to her failure to, among other failures and omissions, report father's child abuse.  Plaintiff's claims have nothing to do with overturning orders entered by the Divorce Action.

Under the *Younger*[8] doctrine, "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in 'certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC,* 953 F.3d 660, 669-70 (10th Cir. 2020).  The doctrine applies to three categories of state cases: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Id.* at 670.  "Only 'exceptional' circumstances merit *Younger* abstention, however, and in the ordinary case, the default rule applies: that '[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'"  *Id.*  Plaintiff's action here is not an attempt to enjoin the state court from proceeding.  Plaintiff is seeking damages for Defendants' gross misconduct in exposing Plaintiff's children to the dangers of their father's abuse.  Even if the Divorce Action were terminated or Defendants were no longer engaged therein, Plaintiff would be bringing this action.  Plaintiff is not seeking to enjoin any order in the Divorce Action.   Therefore, *Younger* does not apply. *See Elna*, 953 F.3d at 672 (citing *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754,

---

Defendant Vogt solely based on her testimony.  This case is based on Defendant's misconduct outside of her court performances.  The immunity in *Hartley* does not apply.

[8]      *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)

759 (9th Cir. 2014)) ("abstention is only appropriate if "the federal action would have the practical effect of enjoining the state proceedings").

Like *Younger*, the *Rooker-Feldman* doctrine prevents a party from appealing a state court decision to a federal court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283–84, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "The proper inquiry for the doctrine is whether the plaintiff, having lost in state court, is seeking review of a state-court judgment that injured him, not whether the plaintiff's injury is somehow 'intertwined' with that judgment." *Sheetz v. Norwood*, 608 Fed. Appx. 401, 404 (7th Cir. 2015). In this case, Plaintiff is not attacking the Divorce Action orders; she is alleging misconduct by Defendants. The injuries for Defendants' failure to report occurred before an order was ever entered and occurred outside the Divorce Action – for example, when Defendant Vogt waved off the DHS abuse investigation. *See,* Dkt. #13 at ¶ 28. Therefore *Rooker-Feldman* does not apply. *See Sticesen v. Fay*, 783 Fed. Appx. 26, 28 (2nd Cir. 2019) (*Rooker-Feldman* does not apply where claims occurred outside of custody orders in state court case). This Court should deny Defendant Vogt's motion.

## VI.   Plaintiff Can Maintain Individual Actions for Harm Caused to Her

Finally, Defendant Vogt speciously argues that Plaintiff has not pled any physical injury from the emotional trauma caused by Defendant Vogt's failures and omissions. Even if accurate (which it is not), the Court of Civil Appeals discussed and disposed of Defendant Vogt's principal argument, that no recovery can be had for negligence that does not result in physical injury:

> [Defendant's] second ground for summary judgment was, absent a physical "injury," [plaintiff] could not recover damages for mental anguish in a negligence case. [Plaintiff's] affidavit describes her damages caused by the shock of learning that her mother's body was cremated. She states that she experienced "feelings of acute distress, panic, fear, shock, physical pain and nausea." Because there is at least minimal evidence of physical symptoms, the lack of recoverable damages cannot be the basis for summary judgment. Although a plaintiff may not recover for mental anguish alone in a negligence case, if there is some physical suffering

connected therewith, the mental anguish may be recovered for. *Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 109 (Okla. 1986). Because there was evidence of physical suffering that accompanied the mental suffering, the physical and mental pain and suffering are both recoverable items of damage.

*Brady v. Criswell Funeral Home, Inc.,* 1996 OK CIV APP 1, at ¶ 13, 916 P.2d 26.

Regardless, and despite Defendant Vogt's contrary assertion, Plaintiff has alleged physical injury accompanying her mental anguish. She asserts that, as a result of Defendant Vogt's actions (or inactions), "Plaintiff experienced **physical pain,** severe emotional distress, mental anguish, lost wages, a loss of quality and enjoyment of life, terror, degradation, oppression, humiliation, and embarrassment. *See* Dkt. #13, ¶ 63. The fact that Plaintiff has alleged physical injury accompanying her mental anguish is sufficient to state actionable damages under a negligence theory. *See, e.g.,* Ellington, 1986 OK 11, ¶ 8 (Supreme Court reversed summary judgment against Plaintiff because physical nausea resulting from emotional shock was a sufficient connection to allow recovery for emotional damages). This Court should deny Defendant's motion.[9]

## CONCLUSION

Plaintiff has sufficiently pled her claims against Defendant Vogt. Additionally, Defendant Vogt is not immune to Plaintiff's claims.

WHEREFORE, premises considered, Plaintiff respectfully requests the Court deny Defendant Vogt's Motion to Dismiss (Dkt. #21).

---

[9]     Further, Defendant Vogt asks that "[a]ll of Maria's individual claims against Vogt must be dismissed." Even if the Court were to find Plaintiff was not entitled to emotional damages, Plaintiff would still be allowed to seek actual damages in the form of lost wages and the money expended from delay and financial enrichment gained by Defendants in refusing to report the father's abuse of Plaintiff's children. The Court should not dismiss "all" Plaintiff's claims even if the Court finds that she cannot seek emotional damages on her own behalf.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ Dustin J. Vanderhoof
Donald E. Smolen, II, OBA #19944
Laura Hamilton, OBA #22619
Dustin Vanderhoof, OBA #21388
611 South Detroit Avenue
Tulsa, Oklahoma 74120
P: (918) 777-4529
F: (918) 890-4529 (Fax)
don@smolen.law
laura@smolen.law
dustin@smolen.law

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to ECF registrants entered in this case.

/s/Dustin J. Vanderhoof
Dustin J. Vanderhoof