**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) MARIA DEL ROSARIO CHICO VIETTI, Individually and as Parent and Next friend of A.R.V., P.F.V. and H.S.V., minor children, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 21-CV-58-JFH-SH |
| (1) WELSH & MCGOUGH, PLLC; an Oklahoma Professional Limited Liability Corporation; | ) ) ) ) | |
| (2) CATHERINE WELSH, an individual; AND, | ) ) | |
| (3) JAIME VOGT, LPC, an individual, | ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS CATHERINE WELSH AND WELSH & MCGOUGH, PLLC'S MOTION TO DISMISS [DKT # 20]**

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ Dustin J. Vanderhoof
Donald E. Smolen, II, OBA #19944
Laura Hamilton, OBA #22619
Dustin Vanderhoof, OBA #21388
611 South Detroit Avenue
Tulsa, Oklahoma 74120
P: (918) 777-4529
F: (918) 890-4529 (Fax)
don@smolen.law
laura@smolen.law
dustin@smolen.law

April 28, 2021

TABLE OF CONTENTS

Page No.

Table of Authority.................................................................................................... iii

Introduction...............................................................................................................1

Summary of the Allegations .....................................................................................2

Standard of Review...................................................................................................5

Argument and Authority ...........................................................................................5

      I.    ***Defendant Welsh is Not Entitled to Judicial Immunity or***
          ***Immunity as a Guardian Ad Litem***..........................................................5

      II.   ***Plaintiff Sufficiently Alleged that Welsh Breached Her Contract***
          ***With Plaintiff***....................................................................................8

      III.  ***Defendant Welsh Owed a Duty to Plaintiff's Minor Children***..............9

      IV.  ***Plaintiff Has Sufficiently Alleged a Claim Under Section 1983*** ........13

          1.   Defendant Welsh Created the Danger and Increased the
              Children's Vulnerability. .........................................................15

      V.   ***Because Plaintiff Has Asserted Tort Claims, Plaintiff Is Entitled***
          ***to Seek Punitive Damages***..................................................................18

Conclusion ..............................................................................................................19

Certificate of Mailing..............................................................................................19

TABLE OF AUTHORITY

Page No.

Cases

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*,
159 F.3d 1253 (10th Cir. 1998) .........................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................5

*Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457 (10th Cir. 1997)..............................8-9

*Byrd v. Woodruff*, 891 S.W.2d 689 (Tex. App. – Dallas 1994) ............................. 12-13

*Cares v. Integris Health, Inc.,* 2018 OK 9, 412 P.3d 98 ...........................................8

*Christopher Joseph Vietti v. Maria Rosario Chico-Vietti*,
Tulsa County District Court Case No. FD-2018-1255 ...............................................1

*Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40 (1991)...............................................5-6

*Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001) ...................................................14

*Dahl v. Charles F. Dahl, M.D., P.C.*, 744 F.3d 623 (10th Cir. 2014) ........................5-6

*Daniels v. Williams,* 474 U.S. 327 (1986) ...........................................................14

*DeShaney v. Winnebago County Dept. of Social Servs.,*
489 U.S. 189 (1989)...........................................................................................14

*Falk v. Sadler,* 533 S.E.2d 350 (S.C. 2000)........................................................6-8

*Gallagher v. Neil Young Freedom Concert*,
49 F.3d 1442 (10th Cir. 1995) ...................................................................... 15-16

*Gilbreath v. Cleveland County Board of County Commissioners*,
No. CIV-11-1037-D, 2013 WL 2431033 (June 3, 2013) ...........................................13

*Gomes v. Hameed*, 2008 OK 3, 184 P.3d 479 ......................................................12

*Massachusetts Bay Ins. Co. v. Langager,*
2017 WL 3586862 (N.D. Okla. Aug. 18, 2017) ........................................................6

*Meeker v. Kercher*, 782 F.3d 153 (10th Cir. 1986).................................................17

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ...................................................................15

*Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) ......................................................................14

*Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996).........................................................................14

*T.A. v. Moore Public Schools*, No. CIV-06-858-C,
2008 WL 11417305 (W.D. Okla. April 23, 2008).........................................................................12

*T.D. v.  Patton*, 868 F.3d 1209 (10th Cir. 2017)......................................................................17-18

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995) ...........................................................................14

*Vogt v. City of Hays, Kansas*, 2017 WL 34455 (10th Cir. Jan. 4, 2017) ...........................................6


Statutes

10A O.S. § 1-2-101(B)(1),.............................................................................................................12

23 O.S. § 9.1(A) .............................................................................................................................19

43 O.S. § 107.3(A)(1).......................................................................................................................9

43 O.S. § 107.3(A)(2) .......................................................................................................................9

43 O.S. § 107.3(A)(4) .......................................................................................................................9

U.S. Const. Amend. XIV § 1 ...........................................................................................................10


Other Resources

The Oklahoma Bar's *Standard Operating Manual for Oklahoma
Guardians Ad Litem Under Title 43* .........................................................................................9-12

COMES NOW the Plaintiff and asks the Court to deny the Motion to Dismiss filed by Defendants Catherine Welsh and Welsh & McGough, PLLC ("Welsh Defendants") (Dkt. #20).[1] In support, Plaintiff states the following:

## INTRODUCTION

This case arises out of Defendants Vogt and Welsh going beyond the scope of their engagement in a case styled *Christopher Joseph Vietti v. Maria Rosario Chico-Vietti*, Tulsa County District Court Case No. FD-2018-1255 (the "Divorce Action"), advocating on behalf of the father of Plaintiff's children, and ultimately failing their respective professional and statutory duties to report the father's abuse of Plaintiff's children.  The Court appointed Defendants Welsh and Vogt in the Divorce Action on July 12 and July 18, 2018 respectively.  From the outset of their appointments, Defendants have exhibited a pattern of malfeasance, misconduct, and neglect of Plaintiff's children under their care.  From the outset of their appointments, Defendants knew that the children's father had abused Plaintiff and was abusing Plaintiff's children.  Further, Defendants knew that the children's father abused substances and had exposed the children to domestic violence.  Yet, Defendants never reported this abuse as required by their professional standards and Oklahoma law.  Instead, Defendants **advocated on the father's behalf**.  Defendants did this to benefit themselves financially. Specifically, Plaintiff alleges that Defendants engaged in a scheme with the father and his counsel in the Divorce Action to seek appointment of Defendant Welsh as Guardian *ad litem* and Defendant Vogt as custody coordinator specifically to advance the interests of the father, which simultaneously advanced the financial interests of Welsh and Vogt. This created a conflict of interest that led Welsh and Vogt to ignore credible reports of

---

[1]  Many of the issues raised in Welsh Defendants' motion are identical to those raised in Defendant Vogt's Motion to Dismiss (Dkt. # 21).  Therefore, many of Plaintiff's arguments are identical to its response to Defendant Vogt's motion. *See* Dkt. # 27.

ongoing and prolonged abuse. As a result of Defendants' failures and omissions, the minor children were, and continue to be, exposed to prolonged physical, sexual, and emotional abuse and neglect.

Plaintiff filed this action alleging negligence, breach of contract, and violation of Plaintiff's children's constitutional rights. Welsh Defendants have moved to dismiss arguing: 1) Welsh Defendants are immune from suit; 2) Plaintiff did not adequately plead her claim of breach of contract; 3) Defendant Welsh, despite being the guardian *ad litem* for Plaintiff's minor children, owed no duty to the minors.; and, 4) Plaintiff did not adequately plead a violation of the 14th Amendment by Welsh Defendants.

Welsh Defendants' motion fails for at least four (4) reasons. **First**, Defendant Welsh is not immune or privileged from her out-of-court failings and omissions that go outside the scope of her appointment in the Divorce Action. **Second**, Plaintiff pled the elements of breach of an implied contract against Defendant Welsh at this early pleading stage. **Third**, Defendant Welsh, as guardian *ad litem* for Plaintiff's minor children, owed a duty to protect those minor children. **Fourth**, Plaintiff sufficiently asserted a violation of the 14th Amendment under a danger creation theory. This Court should deny Defendant Vogt's motion.

## SUMMARY OF ALLEGATIONS

The following facts from Plaintiff's Amended Complaint set out Defendants' negligence, breach of contract, and alternatively, constitutional violations:

1.      On or around July 12, 2018, the Court in the Divorce Action appointed Defendant Welsh to act as Guardian *Ad Litem* for the minor children and act in their best interest, and Plaintiff compensated her for such work. *See* Dkt. # 13, at ¶ 10.

2.      The same Tulsa County District Court adopted the recommendations of Defendant Welsh and appointed Defendant Vogt to act as a licensed therapist for Plaintiff's minor child, A.R.V., and to protect A.R.V.'s best interest. *See id.* at ¶ 11.

3.      On July 18, 2018, the Court in the Divorce Action appointed Defendant Vogt as a therapist for A.R.V. only.  *See id.* at ¶ 25.

4.       Plaintiff compensated Defendant Vogt for her services provided to A.R.V.  *Id.*

5.       Throughout her involvement, Defendant Vogt communicated her findings and opinions to Defendant Welsh. See id. at ¶ 39.  As a result, the following facts were known to Defendant Welsh:

   a.   That the children suffered ongoing and prolonged abuse that was not reported as required by Title 10A of the Children and Juvenile Code. *See id.* at ¶ 15.

   b.   That the father committed child abuse as early as August 14, 2018, including physical abuse with injuries, neglect due to substance abuse, substance abuse (including alcohol, cocaine, acid, marijuana, pain medication, cough medicine, and ecstasy) and exposure to domestic violence. *See id.* at ¶ 16.

   c.   That an Emergency Protective Order was entered in PO-2018-1757 and a police report filed after the father threatened A.R.V. during a supervised visitation. *See id.* at ¶ 16.

   d.   That during eleven separate therapy sessions with A.R.V., A.R.V. disclosed that his father was physically abusive. *See id.* at ¶ 17.

   e.   That on March 16, 2019, during a therapy session with A.R.V., A.R.V. disclosed that his father was drinking and driving the minor children in his vehicle. *See id.* at ¶ 18.

   f.   That on August 16, 2019, the Assistant District attorney made a DHS referral on behalf of the children. *See id.* at ¶ 19.

   g.   That on August 26, 2019, during a forensic interview at the Child Abuse Network, A.R.V. disclosed physical abuse by his father.  P.F.V. also disclosed sexual abuse by her father. *See id.* at ¶ 20.

   h.   That on November 2, 2020, Defendant Vogt testified that A.R.V. disclosed during therapy sessions that his father hit him, hit his mom, hit him in the stomach, and pulled his hair. Defendant Vogt testified that she is a mandatory reporter and yet no abuse report regarding A.R.V. or P.F.V. was made to DHS *See id.* at ¶ 21.

   i.   That Defendant Vogt failed to obtain written consent to provide treatment for all the minor Vietti children as required by the State Board of Behavioral Health. *See id.* at ¶ 22.

   j.   That on August 26, 2019, A.R.V. and P.F.V. were interviewed at the Child Abuse Network and A.R.V disclosed that his father hit him, kicked him, drinks, and yelled at him.  P.F.V. disclosed that her father touched her private parts.  P.F.V. described that her clothes were off, his clothes were on, and that it happened in their living room. *See id.* at ¶ 26.

k.   That on August 26, 2019, OKDHS Child Welfare Specialist, Keegan Eshleman, filed two police reports regarding the abuse of the minor children:  T19011496 Lewd Molestation/Acts/Proposals to a child under 16 and T19011497 Child Abuse. *See id.* at ¶ 27.

l.   That Defendant Vogt actually *refuted* the children's abuse disclosures to DHS even though Defendant Vogt had not seen the children in months and falsely presented herself as a therapist for minor P.F.V. to DHS. *See id.* at ¶¶ 32-33.

m.   That on June 12, 2020, Defendant Vogt emailed counsel and the guardian *ad litem* an altered and forged intake contract for the minor, A.R.V. which Welsh knew or should have known to be false as the subpoena portion of the Financial Agreement Form is slashed thru and initialed by Defendant Vogt. *See id.* at ¶ 37.

6.   Defendants knew, or should have known, that Plaintiff's young children were being sexually and/or physically and/or emotionally abused by their father. *See id.* at ¶ 12.

7.   Defendants negligently delayed their pursuit of the abuse allegations causing further delay and harm to the minor children. *See id.* at ¶ 13.

8.   Plaintiff alleges that the cause for Defendants' delay was due, in part, to increase their own financial benefits. *See id.* at ¶ 14.

9.   The allegations repeatedly made by the Vietti children regarding sexual and/or physical and/or emotional abuse were known to Defendant Welsh, and Defendant Welsh not only disregarded these allegations, but they also went above and beyond to make sure the abusive father obtained as much visitation with the children as possible. *See id.* at ¶ 40.

10.   Defendants engaged in a scheme with the counsel for the father in the Divorce Action to seek appointment of Defendant Welsh as Guardian *ad litem* and Defendant Vogt as custody coordinator.  *Id.* at ¶ 41.

11.   The goal of this scheme between counsel for the father in the Divorce Action and Defendants was for the Defendants to ultimately advocate on the father's behalf in the Divorce while financially benefitting from Plaintiff. *See id.* at ¶ 42.

12.   Defendants furthered their scheme with counsel for the father in the Divorce Action by deliberately ignoring and disregarding the repeated allegations made by the Vietti children regarding sexual and/or physical and/or emotional abuse by the Vietti children's father. *See id.* at ¶ 43.

13.   Defendants Welsh and Vogt exceeded the scope of their duties and responsibilities as Guardian *ad litem* and therapist respectively by:

a.   Engaging in a scheme to financially benefit themselves at the expense of Plaintiff and/or her minor children by deliberately delaying and/or ignoring the abuse sustained by the minor children at the hands of their father.

      b.   Advocating, representing, or attempting to represent the interests of the father in the Divorce Action.

      c.   Deliberately failing to report abuse of the children by their father in contravention of state law and their duty to act for the best interests of the minor children.

      d.   As a result of the Defendants' conduct, the parties have sustained significant damages. *See id.* at ¶ 44.

## STANDARD OF REVIEW

Federal pleading rules require only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading states a claim for relief where the allegations, taken as true, set forth a claim that is "plausible on its face." *Id*. at 570. In making that determination, the Court must accept all well-pleaded allegations as true, even if doubtful, and must construe the allegations most favorably to Plaintiff. *See, e.g., Massachusetts Bay Ins. Co. v. Langager,* No. 16-CV-685-JED, 2017 WL 3586862, *1 (N.D. Okla. Aug. 18, 2017) (citing *Twombly,* 550 U.S. at 555). A claim is "facially plausible" if it has "enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vogt v. City of Hays, Kansas*, No. 15-3266, 2017 WL 34455, *2 (10th Cir. Jan. 4, 2017), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT AND AUTHORITIES

**I.**    **Defendant Welsh is Not Entitled to Judicial Immunity or Immunity as a Guardian** *Ad Litem*

Welsh Defendants first argue that Defendant Welsh is entitled to immunity as a guardian *ad litem*. However, Defendant Welsh fails to inform the Court that, while a guardian *ad litem* has a presumption of immunity for their acts, that presumption may be rebutted. "There are limits to the scope of the immunity for a GAL. Not every act performed by a person with that title is

immunized. For example, as the Tenth Circuit made clear [in a case on which Defendant Welsh relies], **there is no immunity for acts taken in the 'clear absence of all jurisdiction.'**" *Dahl v. Charles F. Dahl, M.D., P.C.*, 744 F.3d 623, 630 (10th Cir. 2014) (emphasis added).  There is no "blanket immunity for any and all actions taken by the guardian. Rather, the guardian remains liable for actions beyond the scope of her duties." *Falk v. Sadler,* 533 S.E.2d 350, 353 (S.C. 2000).  "**It is the nature of the acts, not simply the status of the defendant as a guardian ad litem**, that determines the availability of immunity for the challenged acts and the extent of protection afforded by that immunity." *Id.* at 353-54 (emphasis added).

In a case with similar allegations to this case, the South Carolina Supreme Court held that the district court should not have dismissed claims against a guardian *ad litem* when the complaint alleged that the guardian *ad litem* went beyond the scope of her appointment.  In *Falk*, the court acknowledged that a recommendation by a guardian *ad litem* regarding custody, "no matter how disagreeable," will not sustain an action against a guardian *ad litem*.  *Id.* at 354. However, the court found that the plaintiff went beyond disagreement with a custody recommendation in the complaint:

> [Plaintiff] alleges in her complaint that [guardian ad litem] exceeded the scope of her guardian ad litem duties in several ways. In particular, [plaintiff] alleges that [guardian ad litem]: (1) "exceed[ed] the scope of her Guardian ad Litem duties and responsibilities by advocating, representing or attempting to represent the interests of [plaintiff] and [husband] in issues involving the legal separation of [plaintiff] and [husband];" (2) "exceed[ed] the scope of her duties and responsibilities by interfering with issues between [plaintiff] and [husband] regarding spousal support;" (3) committed misconduct "[i]n attempting to negotiate spousal support for [plaintiff] without authorization in exchange for physical separation of her minor clients from one another;" (4) committed misconduct "[i]n advocating and acting under an inherent conflict of interest in the performance of legal representation of the best interest of her clients, the minor children;" and (5) committed misconduct "[i]n undertaking the dual role of Guardian ad Litem and providing legal advice to or representation of [husband] as to legal matters between [plaintiff] and [husband]."

*Id.* With these allegations, the court determined: "At this point in the proceedings, we find the grant of a judgment on the pleadings, before discovery has been fully completed, is premature. [plaintiff]'s complaint contains several allegations which, if true, show [guardian ad litem] acted outside the scope of her duties as guardian ad litem." *Id.*; *see also Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 52 (1991) ("[A] limited factual inquiry is necessary to determine the nature of [the guardian's] appointment and the extent to which he functioned within the scope of that appointment.").

Like *Falk*, this Court should not dismiss Plaintiff's claims at this early stage before discovery is concluded. Plaintiff fairly alleges in her Complaint that Defendants' conduct went far beyond the scope of their respective appointments. For example:

> Defendants Welsh and Vogt exceeded the scope of their duties and responsibilities as Guardian *ad litem* and therapist respectively by:
>
> a.   Engaging in a scheme to financially benefit themselves at the expense of Plaintiff and/or her minor children by deliberately delaying and/or ignoring the abuse sustained by the minor children at the hands of their father.
>
> b.   Advocating, representing, or attempting to represent the interests of the father in the Divorce Action.
>
> c.   Deliberately failing to report abuse of the minor children by their father in contravention of state law and their duty to act for the best interests of the minor children.

*See* Dkt. 13, at ¶ 44. Defendant Welsh knew that Plaintiff informed Defendant Vogt about the child abuse, the domestic violence, and the substance abuse by the children's father. *See id.* at ¶ 16. Plaintiff's children also informed Defendant Vogt on numerous occasions about abuse. *See id.* at ¶¶ 17, 18, 21. Plaintiff alleges that despite this, Defendant Vogt did nothing and ultimately shut down a DHS investigation. *See id.* at ¶ 28. Specific to Defendant Welsh, Plaintiff alleged Defendant Vogt communicated her findings and opinions to Defendant Welsh. *See id.* at ¶ 39. As a result, the allegations repeatedly made by the Vietti children regarding sexual and/or physical

and/or emotional abuse were known to Defendant Welsh.  *See id.* at ¶ 40.  **Plaintiff alleges that**

**Defendant Welsh not only disregarded these allegations, but went above and beyond to make**

**sure the abusive father obtained as much visitation with the children as possible**.  *See id.*

(emphasis added)  Finally, Plaintiff alleged that Defendant Welsh (and Defendant Vogt) ignored

the abuse and conspired to delay custody determination in order to financially benefit themselves

and *de facto* advocate for the children's abusive father.  *See id.* at ¶¶ 40-44.  The allegations, "if

true, show [Defendants] acted outside the scope of [their] duties. . ."  *Falk*, 533 S.E.2d at 354.

Like *Falk*, this Court should find that a motion to dismiss "before discovery has been fully

completed, is premature."  Therefore, this Court should deny Welsh Defendants' motion.

## II.     Plaintiff Sufficiently Alleged that Welsh Breached the Contract with Plaintiff.

Under Oklahoma law, to assert a claim for breach of contract, Plaintiff must plead: 1) the

formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach. *Cares*

*v. Integris Health, Inc.,* 2018 OK 9, ¶ 11, 412 P.3d 98.

Welsh Defendants' specious argument is limited to the contract formation element of

contract formation.  As the Amended Complaint makes clear, **Defendant Welsh and Plaintiff**

**formed a contract**.  Plaintiff alleged Defendant Welsh entered into a contract with Plaintiff and

became contractually obligated to protect the best interest of Plaintiff's minor children. *See* Dkt.

#13, at ¶ 47.  Further, Plaintiff compensated Defendant Welsh for her services. *See id.* at ¶ 10.

Even in the absence of an express contract, Plaintiff's act of paying Defendant Welsh for her

services to protect the best interest of Plaintiff's minor children can form the basis of an implied

contract.  As the Tenth Circuit (applying Oklahoma law) has held:

> A contract consists not only of the agreements which the parties have expressed in words,
> but also of the obligations which are reasonably implied...." *Burk v. K–Mart Corp.*, 770
> P.2d 24, 26-27 (Okla.1989) (quoting *Wright v. Fidelity & Deposit Co. of Md.*, 176 Okla.
> 274, 54 P.2d 1084, 1087 (1935)); *see also* Okla. Stat. Ann. tit. 15, § 131 (West 1996) ("A

contract is either express or implied"); Okla. Stat. Ann. tit. 15, § 133 (West 1996) ("An implied contract is one, the existence and terms of which are manifested by conduct.").

*Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1461 (10th Cir. 1997).  Plaintiff's allegations are sufficient to allege a contract, particularly at this early pleading stage.  *See id.* ("In Oklahoma, 'normally the issue of whether an implied contract exists is factual.'") (quoting *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, 783 (Okla. 1995).  Therefore, the Court should deny Welsh Defendants' Motion to Dismiss.

**III.  Defendant Welsh Owed a Duty to Plaintiff's Minor Children.**

Defendant Welsh next stunningly argues, without any actual support, that Plaintiff cannot bring an action against Welsh Defendants for negligence because Defendant Welsh, as a guardian *ad litem*, ___owes no duty to the minor children___.  Defendant Welsh's argument defies logic and runs counter to Oklahoma case and statutory law.

Under 43 O.S. § 107.3(A)(1), the Court may appoint a guardian *ad litem* "**to appear for and represent the minor children**." (emphasis added).  While a guardian *ad litem* may be an officer of the Court, the guardian has a duty to "objectively advocate on behalf of the child and . . . . investigate all matters concerning the best interests of the child." 43 O.S. § 107.3(A)(2).  Further, a guardian *ad litem* is responsible for "advocat[ing] for the best interests of the child by participating in the case, attending any hearings in the matter and advocating for appropriate services for the child when necessary [and] monitor(ing) the best interests of the child throughout any judicial proceeding." 43 O.S. § 107.3(A)(2)(b)-(c).  Under the Oklahoma statutes, Defendant Welsh had a duty to advocate for the best interests of Plaintiff's minor children.

When a guardian *ad litem* is appointed, Oklahoma law mandates that the guardian *ad litem* be bound to abide by the Oklahoma Bar's *Standard Operating Manual for Oklahoma Guardians Ad Litem Under Title 43* (the "Operation Manual"). *See* 43 O.S. § 107.3(A)(4); *Standard*

*Operating Manual* attached hereto as Exhibit 1.[2]  The Operating Manual reiterates the statutory duties above and provides further guardian *ad litem* duties and responsibilities.  For example, the Operating Manual provides the following duties and responsibilities:

❖ "A GAL is an officer of the court and is charged with the duty of **protecting the rights of the infant** for the State in its role of *parens patriae*.[3]" Ex. 1, Operating Manual p. 5 (citing *Hoffman v. Morgan*, 206 Okla. 567, 245 P.2d 67, 69, 30 A.L.R.2d 1141 (1952)) (emphasis added).

❖ "The GAL, and the trial court, have **the express duty to provide for the best interests of the child**." Ex. 1, Operating Manual p. 5 (citing *Kahre v. Kahre*, 1995 OK 133, 916 P.2d 1355) (emphasis added).

❖ "[A] GAL should be guided by the best interests of the child and should exercise the GAL's independent judgment on behalf of the child in all relevant matters. These standards represent a compilation of "best practices" for GALs. A GAL . . . is expected to tailor the GAL's activities to the individual circumstances of each child and each case, being guided by facts, circumstances and instances by the GAL's evaluation of the best interest of the child." Ex. 1, Operating Manual p. 5.

❖ "The GAL **must maintain independent representation of the best interest of the child** and perform the GAL's duties faithfully." *Id.* (emphasis added)

❖ The GAL has a duty **to ascertain the "safety and adequacy" of child's placement**. *See id.* at p. 10 (emphasis added).

---

[2]     YOU NEED TO ADD SOMETHING HERE ABOUT THE COURT TAKING JUDICIAL NOTICE OF THE EXHIBIT AND THAT IT DOES NOT CONVERT THIS TO AN MSJ.

[3]     The Operating Manual defines *parens patriae* as "[t]he inherent power and authority of the state to protect the person and property of persons non sui juris, such as minors." Ex. 1, Operating Manual p. 5 (citing *In the matter of Baby Girl L.*, 2002 OK 9, 51 P.3d 544; *McIntosh v. Dill*, 1922 OK 35, 205 P. 917, 925, cert. denied, 260 U.S. 21, 43 S. Ct. 12, 67 L. Ed. 480 (1922)).

❖ "Once an allegation of sexual or other abuse is presented to the GAL, the GAL should allow trained experts, e.g., clinically trained forensic interviewer, DHS or the police, to complete their independent investigation before proceeding; otherwise, the GAL will potentially contaminate the investigation." *Id.* at p. 11.

❖ A GAL is charged with "[i]dentifying issues of concern that relate to the child's best interest, whether raised by the parties or arising out of the GAL's investigation, by use of recommended diagnostic tools and community resources provided by experts in other fields to independently evaluate the issues (e.g., allegations of child abuse or neglect or of risk to the child's safety or welfare, including, but not limited to, physical or mental abuse, sexual abuse, lack of supervision, educational neglect, and exposure of the child to domestic violence or substance abuse), regardless of whether such abuse or neglect or risk is identified in the parties' pleadings." *Id.* at pp. 13-14.

❖ A GAL is charged with "[a]dvocating for timely court reviews and judicial intervention, if necessary" and a GAL should avoid "creating, and should attempt to reduce, delays in the proceedings and should advocate for timely permanence for the child(ren)." *Id.* at p. 14, n. 9.

In addition to the above duties, the Operating Manual makes clear that a guardian *ad litem*, like Defendant Welsh, has a **<u>mandatory duty</u>** to report suspected child abuse and neglect to the DHS **<u>and the Court</u>**:

Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the

Department of Human Services. Reports shall be made to the hotline, 1-800-522-3511. 10A O.S. § 1-2-101 B.1.[4]

            *                             *                            *

If the GAL has reasonable cause to believe a child is in imminent danger, the GAL should report this information to the DHS hotline and should also report the information to the Court through an emergency motion for instructions with the required notice to counsel and *Pro se* parties.

*Id.* at p. 16.

Case law reinforces the duties that a guardian *ad litem* owes to a minor.  The Oklahoma

Supreme Court has opined:

A guardian *ad litem* is not permitted to waive any of the substantial rights of the ward or to consent to anything which would prejudice the minor's rights.  Upon appointment, a guardian *ad litem* becomes an officer of the court and is **<u>charged with the duty of protecting the rights of a minor for the State in its role as</u>** ***<u>parens patriae</u>***. It is the duty of the court to guard with jealous care the interests of minors in actions involving their rights and every presumption is indulged in favor of the minor. If a guardian *ad litem* fails to properly discharge their duty, it becomes the imperative duty of the court to protect the infant's right.

*Gomes v. Hameed*, 2008 OK 3, ¶ 23, 184 P.3d 479, 488.   Further, "[t]he district court's

appointment of a guardian ad litem imposes a formal relationship of confidence between the minor

---

[4]      This duty to report is also expressly set forth in title 10A. Under section 1-2-101(B)(1), persons, like Defendant Welsh, have a statutory duty to report child abuse, like the abuse sustained by Plaintiff's minor children:

Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services. Reports shall be made to the hotline provided for in subsection A of this section. Any allegation of abuse or neglect reported in any manner to a county office shall immediately be referred to the hotline by the Department.

The Western District of Oklahoma found that the mandatory reporting requirement "imposes more than a general duty and specifically requires anyone with reason to believe that a child is a victim of abuse to contact authorities, [and] that it can support a claim for negligence *per se*."  *T.A. v. Moore Public Schools*, No. CIV-06-858-C, 2008 WL 11417305, at *7 (W.D. Okla. April 23, 2008).

and the guardian ad litem. . . . Further, the minor is justified in believing that a special confidence exists and in trusting that the ad litem will endorse her interests." *Byrd v. Woodruff*, 891 S.W.2d 689, 706 (Tex. App. – Dallas 1994) (internal citation omitted); *see also, Gilbreath v. Cleveland County Board of County Commissioners*, No. CIV-11-1037-D, 2013 WL 2431033, at *1 (June 3, 2013) (acknowledging that guardian ad litem owes a fiduciary duty to a ward).

Contrary to Welsh Defendants' illogical argument, Defendant Welsh owed *multiple* duties to Plaintiff's minor children, including a duty to act on the children's best interest, a duty to report suspected child abuse, and a duty to advocate timely resolution of the custody issues and avoid creating or delays. In this case, Plaintiff has alleged that Defendant Welsh violated all of those duties. Plaintiff alleged that Defendant Welsh knew the children's father abused the children, yet deliberately delayed and outright refused to report that abuse in violation of her mandatory reporting requirements. *See* Dkt. 13, ¶¶ 40, 42-44. Plaintiff further alleged that Defendant Welsh deliberately delayed the abuse reporting and custody determination to advocate for the father and benefit herself financially. *See id.* Plaintiff sufficiently pled that Welsh Defendants owed a duty to Plaintiff's minor children and violated the same. Therefore, the Court should deny Welsh Defendants' motion.

## IV. Plaintiff Has Sufficiently Alleged a Claim Under Section 1983.

In her Amended Complaint, Plaintiff has alleged, in the alternative, that the Defendants' violated her children's substantive due process rights by creating a dangerous situation whereby Defendant Welsh ensured placement of Plaintiff's children in the custody of a physically and sexually abusive monster – the children's father.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend.

XIV § 1. The Clause has a substantive component "barring certain government actions regardless of the fairness of the procedures used to implement them," *Daniels v. Williams,* 474 U.S. 327, 331 (1986). The substantive due process clause prevents government officials "from abusing [their] power, or employing it as an instrument of oppression" *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189,196 (1989) (internal quotation marks omitted). Section 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quoting 42 U.S.C. § 1983).

As a general rule, state actors are "only liable under the Due Process Clause for their own acts and not for private violence, . . . there are two recognized exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir. 1995) (citing *DeShaney,* 489 U.S. at 196-97). "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Id.* (citing *DeShaney* at 199-200). Under the danger creation theory, a state actor will be liable "if it created the danger that harmed that individual." *Id.*

In this case, Plaintiff alleges the Defendants violated her children's rights under a "state created danger theory." The "danger creation" theory is clearly established in the Tenth Circuit. *See Currier v. Doran*, 242 F.3d 905, 924 (10th Cir. 2001) (quoting *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) ("In *Armijo* this court determined that 'danger creation jurisprudence was clearly established as a matter of law' by late 1994.")); *see also Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) ("[S]tate officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm.")

The Tenth Circuit articulated a six-point test to establish state-created danger:

(1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *Ruiz v. McDonnell*, 299 F.3d at 1182-83)).   Defendant Welsh' motion solely focuses on the first element and they argue that Defendant Welsh was not a state actor that created the danger.[5]

### 1.   DEFENDANT WELSH CREATED THE DANGER AND INCREASED THE CHILDREN'S VULNERABILITY.

The first element for danger creation is that a state actor created the danger or increased Plaintiff's vulnerability.  That element is easily satisfied here.

Defendant Welsh incorrectly argues that she is not a state actor and did not act jointly with a state actor.  The Tenth Circuit has applied four different tests to determine whether a private individual may be subject to liability under § 1983 as a state actor: the nexus test, the symbiotic

---

[5]     While Plaintiff limits her brief to the single element argued by Defendant Welsh, Plaintiff's allegations satisfy the other four elements of the danger creation theory. Plaintiff's children are part of a limited and definable group of kids who have had a guardian-ad-litem and therapist appointed for them by a Court in a custody case. *See, e.g., T.D.*, 868 F.3d at 1229 (children were part of a definable group of children the state has removed from their natural parent and taken into state custody and placed with the other natural parent).  Defendant Vogt's conduct also put Plaintiff's minor children at substantial risk of serious, immediate, and proximate harm by failing to report and disregarding the father's abuse of the minor children. *See, id.* (social worker put minor at risk of harm by placing child with father despite sex register status and history of abuse). Similarly, the risk to Plaintiff's children was obvious and known at intake, and by failing to report and intentionally telling DHS she was not concerned with those risks and concerns, Defendant Vogt acted recklessly. *See, id.* (withholding concerns about known abuse by social worker showed the social worker acted recklessly).  Finally, Plaintiff addressed Defendants' conscience shocking conduct in its response to Defendant Vogt's Motion to Dismiss.  Plaintiff incorporates by reference its argument on Defendants' conscience shocking conduct in its response to Defendant Vogt's motion. *See* Dkt. # 27.

relationship test, the joint action test, and the public function test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). The nexus test requires a "sufficiently close nexus between the government and the challenged conduct" and, in most cases, renders a State liable for a private individual's conduct "only when [the State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1448 (quotations omitted). The symbiotic relationship test asks whether the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *Id.* at 1451 (quotations omitted). The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453. Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State...." *Id.* at 1456 (quotations omitted).

In this case, Plaintiff has clearly pled in the alternative that Defendants Vogt and Welsh were state actors under the symbiotic relationship test and the public function test.  The Court appointed Defendants Vogt and Welsh to assist the Court in performing the state's function of determining the custody of Plaintiff's children.  The state, *via* the Court in the Divorce Action, put itself in a position of interdependence with the Defendants in determining custody.  Similarly, Defendants were assisting the District Court in performing one of the state's public functions – determining custody.  The Court made Defendants "officers of the Court with the authority to protect and foster the best interests of the minor children."  *See* Order Appointing Guardian *Ad Litem*, attached hereto as Exhibit 2. Further, the Court ordered that Defendant Welsh owed "her

primary duty to the Court and not to the minor children alone." *Id.* Plaintiff has clearly alleged that Defendants were state actors.[6]

It is evident as well that Defendant Welsh created the danger. A case on point is *T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017). In *T.D.*, on appeal from denial of defendant's summary judgment, the Tenth Circuit held that a social worker created the danger in placing a minor child with the child's biological father – a registered sex offender who sexually and physically assaulted the minor. In *T.D.,* the social worker was aware of multiple instances of father's abuse and violence, including allegations of abuse of other children, domestic violence, and sex offender registration. *Id.* at 1227-28. Additionally, the social worker was aware that the father abused the minor child at issue. *See id.* Despite this knowledge, the social worker recommended that minor be placed with and remain in father's custody. Further, the social worker failed to investigate the abuse claims. *See id.* at 1228. The Tenth Circuit held that the social worker created the danger:

> By (1) recommending that [minor] be placed and later recommending that [minor] remain in [father]'s temporary custody, (2) intentionally removing from her report to the juvenile court her knowledge and concerns regarding [father]'s fitness as a caretaker, and (3) failing to investigate evidence of potential abuse, Ms. Patton helped create or increase [minor]'s vulnerability to the danger posed by [father].

*Id.* at 1229.

---

[6]     Plaintiff anticipates that Defendants will cite *Meeker v. Kercher*, 782 F.3d 153, 155 (10th Cir. 1986), for the proposition that a guardian-ad-litem cannot be a state actor. However, that case is distinguishable. There, the Tenth Circuit's reasoning was based on its finding that, in that case, the guardian-ad-litem assumed no "obligation to the mission of the state. . . but owe[d] his or her undivided loyalty to the minor, not the state." *Id.* In this case, however, the Court in the Divorce Action, in appointing Defendants Welsh and Vogt, ***specifically*** informed the Defendants and parties that Defendant Welsh "owe[d] her primary duty to the Court and not to the minor children alone." Ex. 2 (emphasis added). By specifically ordering that Defendants' duty was owed to the Court and not solely to Plaintiff's minor children, the Court removed any impediment to this Court finding that Defendants were state actors.

In this case, Plaintiff alleges that Defendant Welsh's knowledge of ongoing abuse was coextensive to Vogt's. For example, Defendant Welsh was aware that during an intake with Plaintiff, Plaintiff informed Defendant Vogt of suspected child abuse by the father, including physical abuse with injuries, neglect due to substance abuse, substance abuse (including alcohol, cocaine, acid, marijuana, pain medication, cough medicine, and ecstasy) and domestic violence. Defendant Welsh knew that Plaintiff provided Defendant Vogt a copy of Emergency Protective Order PO-2018-1757.  Defendant Welsh knew Plaintiff informed Defendant Vogt of a police report filed after the father threatened A.R.V. during a supervised visitation.  Defendant Welsh knew that during eleven separate therapy sessions with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed that his father was physically abusive.  Defendant Welsh knew on March 16, 2019, during a therapy session with A.R.V., Defendant Vogt was informed of suspected child abuse when the child disclosed the father was drinking and driving the minor children in his vehicle. Yet, she never reported father's abuse to the DHS. Defendant Welsh knew when the DHS investigated the abuse after being alerted by other parties, Defendant Vogt actually **expressed no concerns about abuse,** effectively ending the DHS investigation.  The allegations repeatedly made by the Vietti children regarding sexual and/or physical and/or emotional abuse were known to Defendant Welsh. *See id.* at ¶ 40.  Plaintiff alleged that Defendant Welsh not only disregarded these allegations, but went above and beyond to make sure the abusive father obtained as much visitation with the children as possible. *See id.*  Defendant Welsh placed the kids in danger and increased the minor children's vulnerability to the danger.  *See T.D.,* 868 F.3d at 1229.

**V.     Because Plaintiff Has Asserted Tort Claims, Plaintiff Is Entitled to Seek Punitive Damages.**

Under Oklahoma law, a jury can award punitive damages for the breach of an obligation not arising from contract.  23 O.S. § 9.1(A). Because Plaintiff has sufficiently tort and breaches of other obligations not arising under contract, Plaintiff is permitted to seek punitive damages.  The Court should dismiss Welsh Defendants' motion.

<u>**CONCLUSION**</u>

Plaintiff has sufficiently pled her claims against Welsh Defendants.  Additionally, Welsh Defendants are not immune to Plaintiff's claims.

WHEREFORE, premises considered, Plaintiff respectfully requests the Court deny Welsh Defendants' Motion to Dismiss (Dkt. #20).

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ Dustin J. Vanderhoof
Donald E. Smolen, II, OBA #19944
Laura Hamilton, OBA #22619
Dustin Vanderhoof, OBA #21388
611 South Detroit Avenue
Tulsa, Oklahoma 74120
P: (918) 777-4529
F: (918) 890-4529 (Fax)
don@smolen.law
laura@smolen.law
dustin@smolen.law

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of April 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to ECF registrants entered in this case.

/s/Dustin J. Vanderhoof
Dustin J. Vanderhoof