IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MARIA DEL ROSARIO CHICO VIETTI, Individually and as Parent and Next Friend of A.R.V., P.F.V. and H.S.V., minor children, <br><br>      Plaintiff, <br><br>v. <br><br>(1) WELSH & MCGOUGH, PLLC, an Oklahoma Professional Limited Liability Corporation; <br>(2) CATHERINE WELSH, an individual, and <br>(3) JAIME VOGT, LPC, an individual, <br><br>      Defendants. | No. 21-CV-58-JFH-SH |

**REPLY BRIEF OF DEFENDANTS WELSH & MCGOUGH, PLLC AND CATHERINE WELSH IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendants Welsh & McGough, PLLC ("W&M") and Catherine Welsh previously asked the Court to dismiss the putative claims within Plaintiff's First Amended Complaint ("FAC") because (1) Defendant Catherine Welsh is a court-appointed guardian ad litem and enjoys immunity from suit defined by both Oklahoma law and federal law; and (2) Plaintiff has failed, in any event, to plead any actionable claim, whether premised on Oklahoma law or 42 U.S.C. § 1983.

In response to those positions, Plaintiff (1) never challenges the scope of Oklahoma immunity; (2) seeks to avoid federal immunity through resort to South Carolina law; and (3) fails to substantiate any claim on the basis of actually pleaded allegations, instead resorting to theories and materials entirely extrinsic to the FAC. W&M and Catherine Welsh again ask the Court to dismiss the FAC with prejudice.

{2314006;} [1]

**Argument**

I.   **As a Matter of Law, Catherine Welsh Enjoys Immunity From Suit.**

   A.   **Oklahoma law**

Plaintiff's briefing fails to challenge in any manner the legal reality that Oklahoma law provides absolute, unqualified immunity to a guardian ad litem "for all acts arising out of or relating to the discharge of his duties as guardian ad litem." *Perigo v. Wiseman*, 11 P.3d 217, 217-18 (Okla. 2000) (issuing a writ of prohibition to Judge Wiseman to prevent further proceedings in CJ-00-2070 against guardian ad litem Jerry Perigo). As Oklahoma law governs Plaintiff's state law claims in this diversity action,[1] no state law claim can possibly provide any basis for proceeding to discovery,[2] or for imposing liability.

   B.   **Federal law**

After ignoring Oklahoma law, Plaintiff spends much of her briefing attempting to limit the Tenth Circuit's decision in *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Trust*, 744 F.3d 623 (10th Cir. 2014), as it holds that guardians ad litem enjoy absolute quasi-judicial immunity except with respect to actions taken in the "clear absence of all jurisdiction." In that regard, *Dahl* itself makes clear that a "function [ ] closely associated with the judicial process" is clearly within a guardian ad litem's jurisdiction: "[A] guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." *Dahl*,

---

[1] FAC ¶ 7 expressly pleads that federal subject-matter jurisdiction is supported by 28 U.S.C. 1332.

[2] As a reminder, 43 O.S. § 107.3(A)(2)(e) provides that a guardian ad litem "is not subject to discovery pursuant to the Oklahoma Discovery Code"—a substantive law command that should also prevail in this diversity action.

744 F.3d at 630 (quoting *Gardner ex rel. Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989)).

And, from that general principle, two material holdings followed.  First, the Circuit explained that a guardian ad litem does not act outside of her jurisdiction by allegedly violating federal law:

> But <u>an act is not outside of a GAL's jurisdiction just because it is wrongful, even unlawful</u>. As the Supreme Court said in *Stump,* "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." 435 U.S. at 356–57, 98 S.Ct. 1099 (internal quotation marks omitted). Immunity does not protect only the innocent. Why grant immunity to those who have no need of it? . . .  Immunity is conferred so that judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort.

*Id.* at 630-31 (emphasis added).  Second, claims of advocacy for, or alignment with, one litigant are insufficient to place a guardian ad litem outside of her jurisdiction:

> Alternatively, Ms. Dahl argues that Mr. Peterson was not acting within his jurisdiction because he "abandoned his role as the GAL to advocate for [Dr. Dahl]." Aplt. Br. at 44. <u>But her complaint amounts to no more than challenging Mr. Peterson's motives and criticizing what he decided to do or say on various occasions; she does not dispute his authority to make the decisions. Certainly a GAL has authority to assist one of the parties when the parties are at odds about who should have custody. Ms. Dahl's grievance is only that the GAL decided to assist Dr. Dahl instead of her</u>.

*Id.* at 631 (emphasis added).

In the face of that Tenth Circuit law, Plaintiff asks the Court to ignore the Circuit's guidance, and instead look to the scope of immunity afforded to a guardian ad litem by South Carolina law.  Citing *Falk v. Sadler*, 533 S.E.2d 350 (S.C. 2000), Plaintiff insists that the Court's inquiry should **not** be whether Catherine Welsh acted in the "clear absence of all jurisdiction," but instead should be merely whether she "acted outside the scope of her duties as guardian ad litem." (Resp. at 7, quoting *Falk*).[3]  That is because <u>only the latter inquiry</u> allows Plaintiff to contend in

---

[3] As a reminder, Plaintiff's pleaded contention is <u>not</u> that Catherine Welsh acted in the "clear absence of all jurisdiction," but that she "exceeded the scope of [her] duties and

anything resembling good faith that Plaintiff's allegations can place Catherine Welsh outside the protections afforded by quasi-judicial immunity.

Following Tenth Circuit guidance, however, it is clear that none of the allegations urged by Plaintiff suffice to demonstrate that Catherine Welsh in any sense plausibly acted in the "clear absence of all jurisdiction." *See Schwab v. Kansas Dep't of Children and Families*, No. 20-3099, 2021 WL 982246 at *8 (10th Cir. Mar. 16, 2021) (affirming the dismissal of pleaded contentions that a guardian ad litem "worked outside the scope of her position" in various ways, including "promoting a narrative she knew or should have known was false," because "a guardian ad litem's act does not fall outside her jurisdiction just because it was in error, wrongful, unlawful, done maliciously, or in excess of her authority. This is so because '[i]mmunity is conferred so that judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort.'" (citations omitted)); *Shophar v. City of Olathe*, No. 15-CV-4961-DDC-KGS, 2017 WL 2618494 at *11 (D. Kan. June 16, 2017) (granting a 12(b)(6) motion because "all of plaintiff's allegations against Ms. Yarnell involve acts she committed as part of her appointment as a guardian ad litem for the children," and "Plaintiff's allegations that Ms. Yarnell was biased against plaintiff or that she made false statements about him in court also cannot suffice to deprive her of immunity, even if these acts were wrongful or unlawful"); *Walker v. New Mexico*, No. 15-295 KK/SCY, 2015 WL 13651131 at *1, 4 (D. N.M. Sept. 21, 2015) (granting a 12(b)(6) motion because "Defendants Cosgrove-Aguilar and Sheppard," who allegedly "failed or refused to review evidence and information Plaintiff sought to present," acted "within, or at most in excess of, the

---

responsibilities as guardian ad litem" by, among other things, "engaging in a scheme to financially benefit [herself] at the expense of Plaintiff." (FAC ¶ 44).

jurisdiction that the Second Judicial District Court duly delegated to them, and certainly not in the complete absence of all jurisdiction").[4]

Nor, consistent with that understanding, is immunity from suit altered by conspiracy allegations. (FAC ¶¶ 41-44). In *Wallace v. Powell*, No. 3:09-cv-286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), two judges conspired with private detention facilities to direct juveniles to those facilities in exchange for payments of $2.6 million to the judicial officers. *See id.* at *1. Such conduct was nonetheless insufficient to reflect a "clear absence of all jurisdiction" that would defeat immunity because the actions taken in furtherance of the conspiracy—the entry of an injunction and the adjudication and sentencing of juveniles—were "both well within the jurisdiction" of the judges. *See id.* at *7.

Given that controlling law, as well as the unavailability of South Carolina law on which Plaintiff relies, there can be no doubt that Catherine Welsh must enjoy absolute immunity with respect to state law claims, as well as quasi-judicial immunity with respect to federal law claims. Notably, such holdings do not preclude Plaintiff from continuing her presently ill-founded attempts to establish child abuse in the underlying custody case pending in Tulsa County. Instead, they merely prevent Plaintiff from the present act of forum shopping her already-rejected theory of child abuse from a court she dislikes to a court in which she can (wrongly) attempt to relitigate the facts. The legal reality is, simply, that Plaintiff's remedy—if any is, in fact, warranted—is an appeal within the state court system, rather than her attempted use of this Court to review Judge Bruce's decisions. *See, e.g.*, *Walker*, 2015 WL 13651131 at *5 (explaining, following the

---

[4] Accordingly, the "clear absence of all jurisdiction" standard effectively grants absolute immunity for all actions associated with the judicial process. An example of an action taken in the "clear absence of all jurisdiction" would be the firing of an employee. Such an action would be administrative rather than judicial in nature. *See Forrester v. White*, 484 U.S. 219 (1988). No such allegation is present as part of the FAC.

application of quasi-judicial immunity, that "[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability").

**II.     Irrespective of Immunity from Suit, Plaintiff Has Failed to Plead Any Actionable Claim.**

    **A.     Breach of Contract**

Plaintiff's FAC never identifies any contract—verbal, written, implied or otherwise—between Plaintiff and Catherine Welsh. Moreover, that Plaintiff can identify no contract is entirely unsurprising because Catherine Welsh was acting as a court-appointed guardian ad litem (FAC ¶ 10), and no contract was ever necessary to define the guardian's role or to specify the payment obligation owed by Plaintiff. *See, e.g.*, 43 O.S. § 107.3(A)(3) ("Expenses, costs, and attorney fees for the guardian ad litem may be allocated among the parties as determined by the court."). Hence, whether Plaintiff paid or failed to pay Catherine Welsh is not a matter of contract, but of judicial order and a presently pending contempt proceeding. All breach of contract allegations should be dismissed.

    **B.     Negligence**

Literally nothing actually pleaded by Plaintiff, or referenced as Oklahoma law, supports Plaintiff's contention that Catherine Welsh owes any actionable duty to Plaintiff or the Vietti children. Instead, Oklahoma law explains that the duties owed by a guardian ad litem are owed to the district court, which has the authority to review the actions of the guardian ad litem. *See Kahre v. Kahre*, 916 P.2d 1355, 1362 (Okla. 1995) (explaining that a guardian ad litem "becomes an officer of the court"). Undoubtedly, the guardian ad litem is required to advocate the child's best interests, but that reality does not mean that she must advocate for what one parent's view of those

interests may be. Plaintiff cannot simply superimpose any number of aspirational common law duties upon a relationship defined by statute and by court order.[5]

Nor, in any event, is any obligation to report suspected child abuse relevant to the duty analysis. Notably, that obligation applies only when a person has a "reason to believe" that abuse or neglect has occurred. Following an investigation for which immunity is afforded by law, Catherine Welsh found no evidence of abuse, and Plaintiff's disagreement simply does not give rise to any cognizable duty or, more generally, any viable civil action.

### C.   42 U.S.C. § 1983

Literally <u>none</u> of the content of Plaintiff's FAC identifies a "danger creation" theory of § 1983 liability. That is why Catherine Welsh explained in her opening brief that Plaintiff's theory appears to be that a guardian ad litem can have § 1983 liability for alleged physical injuries inflicted by a <u>third party, non-state actor</u> (in this case, Plaintiff's husband and the children's father). (FAC ¶¶ 60-62). That result is directly precluded by the Supreme Court's long-standing decision in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 203 (1989) (affirming a grant of summary judgment to state actors because "the harm was inflicted not by the State of Wisconsin, but by Joshua's father").

For the first time in her Response Brief, however, Plaintiff contends that her pleading was actually intended to connote a "danger creation" theory by which a state actor can, under limited circumstances, have liability for the acts of a non-state actor. Plaintiff's allegations nonetheless

---

[5] In that regard, Plaintiff attempts to import the obligations contained in Oklahoma Bar's GAL Manual as if they were actually pleaded in her FAC. As the Court knows well, however, all that is material to a 12(b)(6) motion is the actually pleaded allegations. *See, e.g., Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (explaining that courts must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted").

fail to state a claim not only because they are **not** pleaded within the FAC, but because even Plaintiff's Response Brief fails to suggest that the conditions necessary to assert a viable "danger creation" claim are present.

i. **Plaintiff's aspirational theory of "danger creation"**

The principal case on which Plaintiff relies, *T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017), involved a Denver Department of Human Services social worker who removed a minor from his mother's home, ultimately placing him with his father, who had a known, documented history of sex offenses, and was a registered sex offender. This case, Plaintiff advises, is the exemplar decision that demonstrates liability because "the social worker was aware that the father abused the minor child at issue" and "the social worker failed to investigate the abuse claims." (Resp. at 17). Yet, the litigation in *T.D.* was commenced in 2014, <u>after</u> both (1) the removal of T.D. from his father's home, and (2) the substantiation of both physical and sexual abuse by the Denver Department of Human Services. *See id.* at 1219. In this case, not only does Catherine Welsh lack any authority to do anything other than make recommendations to Judge Bruce (who, of course, <u>makes all decisions that impact the minor children at issue</u>), but Plaintiff's FAC contains no similar allegation that the father of the Vietti children has any known, documented history of physical or sexual abuse of any kind substantiated by Oklahoma's Department of Human Services. Instead, there are only Plaintiff's aspirational allegations, all of which have been determined to be unsubstantiated by both DHS and Judge Bruce.

ii. **The actual legal requirements of a "danger creation" theory**

Although Plaintiff is quick to recite the six elements of a "danger creation" claim in her response brief (Resp. at 15), and to impute allegedly relevant content to each, Plaintiff provides none of the context in which a court must evaluate those six factors. For example, there can be no liability under a "danger creation" theory absent "an intent to harm" or "an intent to place a person

unreasonably at risk of harm." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1272, 1302 (D. N.M. 2015) (emphasis added) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 2015)). Moreover, mere inaction by a state actor is insufficient to impose liability. *See id.* (quoting *Gray v. Univ. Colo. Hosp. Auth.*, 672 F.3d 909, 916 (10th Cir. 2012) ("This state created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger.")).

With that in mind, the FAC alleges that Catherine Welsh acted "deliberately" only with respect to "ignoring and disregarding the allegations repeatedly made by the Vietti children." (FAC ¶ 43). There is no allegation that Catherine Welsh intended to harm the children, or that she intended to place them "unreasonably at risk of harm." Indeed, as only Judge Bruce could have modified the default visitation arrangement, which was in place prior to Catherine Welsh's appointment, no such allegation could even be made in good faith.

Beyond the absence of those foundational understandings, and with respect to the elements of a "danger creation" theory pursuant to Tenth Circuit law, Welsh is never alleged to have created the alleged threat of abuse from the children's father, and there is no allegation that Welsh engaged in any "affirmative conduct" that resulted in greater exposure of the children to their father. Again, this case, like *Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008), involves only a claim that Welsh failed to urge a modification of the default visitation order. Such <u>inaction</u> cannot support a "danger creation" theory. *See Robbins,* 519 F.3d at 1252 (dismissing a § 1983 claim for failure to state a claim because "The allegations of 'lulling' and 'doing nothing' do not give rise to a reasonable expectation of relief, given that *DeShaney* requires an affirmative act before imposing liability.").

Even more clearly for the purpose of this action, however, the issue of whether the conduct of the guardian ad litem "shocks the conscience" is easily addressed. To satisfy the "shock the

conscience" standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 574. Again, in this case, Plaintiff does not (and cannot) allege that Catherine Welsh intentionally or recklessly caused injury to the Vietti children in the required sense because Catherine Welsh never had any authority to enter any order that reduced visitation with their father. Nor is there any substantiation of actual physical or sexual abuse, so there is no colorable "outrageous" opportunity for potential harm to any child. Accordingly, in this action, as in *DeShaney*, there is simply "no affirmative obligation under the Due Process Clause to protect 'the interests of life, liberty, and property . . . against invasion by private actors.'" *Robbins*, 519 F.3d at 1252.

## Relief Requested

This action continues to exist for only one reason: Plaintiff cannot obtain the relief she demands in No. FD-2018-1255 in the District Court of Tulsa County, no matter how many "emergency" applications for relief she files or how many DHS complaints she initiates. Given that (1) Plaintiff's claims are precluded by the immunity from suit defined by both Oklahoma law and federal law, and (2) Plaintiff has failed to state any actionable claim in any event, W&M and Catherine Welsh again ask the Court to dismiss the entirety of the FAC for failure to state any claim against either Catherine Welsh or W&M <u>with prejudice</u> to refiling, as (1) Plaintiff has already amended her Complaint once, having notice of both immunity from suit and the legal deficiencies of her pleading, and (2) no amended pleading can defeat the immunity from suit enjoyed by a guardian ad litem.

        Respectfully submitted,

        Todd G. Tucker, OBA #15469
        WELSH & MCGOUGH, PLLC
        2727 E 21st St #600
        Tulsa, OK 74114
        Phone: (918) 585-8600
        Fax: (918) 794-4411
        Email: todd@tulsafirm.com

        and

        /s/*Bradley W. Welsh*
        Bradley W. Welsh, OBA #18488
        GABLE & GOTWALS
        110 North Elgin, Suite 200
        Tulsa, OK  74120
        Phone: (918) 595-4800
        Fax: (918) 595-4990
        E-mail: bwelsh@gablelaw.com

## **CERTIFICATE OF SERVICE**

On May 5, 2021, I electronically transmitted the attached document to the Clerk of Court for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

 Donald E. Smolen, II
 Laura Hamilton
 Dustin Vanderhoof

        /s/*Bradley W. Welsh*