IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MARIA DEL ROSARIO CHICO VIETTI,
    Individually and as Parent and Next
    Friend of A.R.V., P.F.V., and H.S.V.,
    minor children

    Plaintiff,

v.                                         No. 21-cv-00058-WPJ-SH

(1) WELSH & MCGOUGH, PLLC;
    An Oklahoma Professional Limited
    Liability Corporation;
(2) CATHERINE WELSH, an individual; and
(3) JAIME VOGT, LPC, an individual,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court[1] upon motions to dismiss filed by Defendants Welsh & McGough ("W&M") and Catherine Welsh ("Welsh") (Doc. 20), and Defendant Jaime Vogt ("Vogt") (Doc. 21). Defendants seek dismissal of Plaintiff Maria Del Rosario Chico Vietti's First Amended Complaint (Doc. 13), filed March 12, 2021. Plaintiff responded to each (Docs. 28, 27), to which Defendants replied (Docs. 29, 30). Having reviewed the parties' briefing and the applicable law, the Court finds the motions to dismiss are well-taken and grants them both.

**STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's allegations must cross the line from conceivable to plausible and must be more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" or "formulaic recitation[s] of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Lastly, in deciding "a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint." *Cnty. Of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

Overall, the "plausibility" standard refers to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "'The *Twombly* standard may have greater bite' in the context of a § 1983 claim against individual government actors, because 'they typically include complex claims against multiple defendants.'" *Kan. Penn Gaming, LLC*, 656 F.3d at 1215 (quoting *Robbins*, 519 F.3d at 1249). These standards inform the ensuing background section and the Court's opinion.

## BACKGROUND

Plaintiff Maria Del Rosario Chico Vietti ("Plaintiff") is a party to a protracted and contested divorce and child custody action pending in the Tulsa County District Court, State of

2

Oklahoma (pending at the time of the filing of this action and the motions to dismiss). Doc. 13, at ¶ 10. In connection with the divorce and custody action, Welsh was appointed by the Tulsa County District Court as the guardian *ad litem* of Plaintiff's minor children. *Id.* The Tulsa County District Court has adopted Welsh's recommendations made in the action. *Id.* at ¶ 11. Also, Vogt was "appointed [by that court] to act as a licensed therapist for A.R.V.," one of Plaintiff's minor children, and "to protect [A.R.V.'s] best interest." *Id.* Plaintiff compensated Vogt for her services. *Id.*

Plaintiff's First Amended Complaint makes several allegations related to Welsh's actions taken in the Tulsa County litigation. Specifically, Plaintiff alleges that the minor children were being "sexually and/or physically and/or emotionally abused by their father." *Id.* at ¶ 12. Plaintiff alleges that Welsh knew this, disregarded this information and "went above and beyond to make sure the abusive father obtained as much visitation with the children as possible." *Id.* at ¶¶ 40, 43. Further, Plaintiff contends that Welsh delayed her "pursuit of this matter causing further delay and harm to the minor children[,]" Welsh acted to increase her own financial benefit, and engaged in a scheme to be appointed as the guardian *ad litem* in the divorce action to advocate on the father's behalf and exceeded the scope of her duties. *Id.* at ¶¶ 13, 14, 41, 42, and 44.

Plaintiff makes similar allegations related to Vogt's actions. Concerning the allegations of the father's abuse of the children, Plaintiff states Vogt knew of this abuse. *Id.* at ¶ 12. Plaintiff contends that despite this knowledge, Vogt "delayed [her] pursuit of this matter," acted to increase her own financial benefits and failed to report the abuse being suffered by the children. *Id.* at ¶¶ 13–15. Plaintiff alleges Vogt was informed of child abuse on August 14, 2018, during eleven (11) separate therapy sessions with A.R.V., and on March 16, 2019. *Id.* at ¶¶ 16–18. Vogt also "interviewed" another one of the minor children, P.F.V., on September 25, 2019. *Id.* at ¶ 29. On

3

November 2, 2020, Vogt testified before the Tulsa County District Court that A.R.V. had disclosed abuse. *Id.* at ¶ 21.

Plaintiff further alleges Vogt "did not obtain written consent to provide treatment for all the minor Vietti children," impermissibly provided forensic services, was interviewed by DHS and indicated she had no concerns of child abuse resulting in a DHS referral of abuse by the father being "screened out," impermissibly provided an opinion to a child welfare investigator, falsified a client's record, and forged an intake contract. *Id.* at ¶¶ 22, 24, 28, 34, 35, and 37. Plaintiff contends Vogt engaged in a scheme with Welsh and the father's counsel to seek appointment as a custody coordinator. *Id.* at ¶¶ 41–43. Plaintiff alleges that in carrying out this scheme, Vogt exceeded the scope of her duties as a therapist to financially benefit herself by deliberately delaying and ignoring abuse by the father, advocating, representing, or attempting to represent, the interests of the father in the divorce action, and deliberately failing to report abuse of the minor children by the father in contravention of state law and her duty to act for the best interests of the minor children. *Id.* at ¶ 44.

Based on these factual allegations, Plaintiff asserts breach of contract, negligence, violation of the Eighth and/or Fourteenth Amendments, and punitive damages[2] claims against Defendants Welsh, W&M, and Vogt. *See* Doc. 13. All Defendants seek dismissal. Docs. 20, 21.

Finally, regarding the background on this case, in evaluating the motions to dismiss, the Court must accept as true the factual allegations stated in Plaintiff's First Amended Complaint. That said, as appropriate, the Court takes judicial notice of the existence and content of the orders and pleadings submitted and publicly filed in the state court proceedings (via the Oklahoma State

---

[2] Punitive damages are an element of recovery and not a separate cause of action. *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993). "The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages." *Id.* To the extent Plaintiff is attempting to assert a separate claim for punitive damages, it must be dismissed.

Courts Network, https://www.oscn.net): FD:2018-1255, PO:2018-1757, PO-2018-4106, PO-2020-3718 . *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *see also Robinson v. Harvanek*, 2023 WL 2564340, at *1 n.7 (N.D. Okla. March 17, 2023) ("Because neither party provided copies of the state court decisions . . . the Court takes judicial notice of the state-court record and documents linked thereto that are available to the public through the Oklahoma State Courts Network.") (citing *Johnson v. Spencer*, 950 F.3d 680, 705–06 (10th Cir. 2020) (discussing federal courts' discretion to take judicial notice of public records including records of state court proceedings)); *Graham v. White*, 2023 WL 4141662, at *1 n.1 (N.D. Okla. June 22, 2023) ("the Court also takes judicial notice of state court records that are available to the public through the Oklahoma State Courts Network") (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). The records of the Oklahoma state court proceedings support a conclusion that Plaintiff's allegations of child abuse were raised with and investigated by the State of Oklahoma and no evidence was found to substantiate those allegations.

## DISCUSSION

I. **Defendant's Welsh & W&M**

Welsh and W&M argue dismissal is warranted because as guardian *ad litem*, Welsh is immune from suit under federal law and Oklahoma law and, further, that Plaintiff has failed to state a claim against Welsh and W&M. Doc. 20. The Court agrees.

   a. *Quasi-Judicial Immunity*

The Tenth Circuit has recognized guardians *ad litem* are entitled to quasi-judicial immunity. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623 (10th Cir. 2014). Specifically, the Tenth Circuit has explained:

> Absolute immunity has long been available to protect judges from liability for acts performed in their judicial capacity. Over time the defense has been extended to

5

> certain others who perform functions closely associated with the judicial process. There is widespread recognition that guardians ad litem are entitled to the defense, which is often called quasi-judicial immunity when it is applied to someone other than a judge.
>
> There are limits to the scope of the immunity for a GAL. Not every act performed by a person with that title is immunized. For example, there is no immunity for acts taken in the clear absence of all jurisdiction. We need not resolve the precise boundaries of the privilege, however, because [the guardian ad litem's] challenged acts were within the core duties of a GAL in assisting the court—that is, in performing a function [] closely associated with the judicial process. As a fellow circuit has said, a guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality. . . .
>
> But [the plaintiff-mother's] complaint amounts to no more than challenging [the guardian ad litem's] motive and criticizing what he decided to do or say on various occasions; she does not dispute his authority to make the decisions. Certainly a GAL has authority to assist one of the parties when the parties are at odds about who should have custody. [The mother's] grievance is only that the GAL decided to assist [the father] instead of her. Moreover, even if [the guardian ad litem] acted outside his jurisdiction in some respects, he would not thereby forfeit immunity for the conduct challenged here regarding the October 12 recording. Because [the guardian ad litem] used the recording in furtherance of his GAL duties and in response to the court's order to report on the well-being of the children, he is entitled to quasi-judicial immunity . . . .

*Id.* at 630–31 (cleaned up). Despite this binding, on-point authority, Plaintiff urges the Court to consider South Carolina law regarding immunity of guardians *ad litem*. *See* Doc. 28, at 10; *see also Falk v. Sadler*, 533 S.E.2d 350, 354 (S.C. Ct. App. 2000) (holding that a judgment on the pleadings because discovery had been completed was premature because the plaintiff's complaint contained several allegations that, if true, showed the *guardian ad litem* acted *outside the scope* of her duties as *guardian ad litem* and is thus not entitled to immunity under state precedent) (emphasis added). Plaintiff alleges Welsh:

> [E]xceeded the scope of [her] duties and responsibilities as Guardian *ad litem* . . . by:

6

> a. Engaging in a scheme to financially benefit themselves at the expense of Plaintiff and/or her minor children by deliberately delaying and/or ignoring the abuse sustained by the minor children at the hands of their father.
>
> b. Advocating, representing, or attempting to represent the interests of the father in the Divorce Action.
>
> c. Deliberately failing to report abuse of the minor children by their father in contravention of state law and their duty act for the best interests of the minor children.

Doc. 13, at ¶ 44. Based on these allegations, Plaintiff—relying on South Carolina's *Falk* case—contends dismissal is inappropriate. Doc. 28, at 10–12. The Court declines Plaintiff's invitation to apply South Carolina law, especially considering there is controlling Tenth Circuit and Oklahoma caselaw directly on point.[3]

Here, the First Amended Complaint asserts claims against Welsh only for acts she performed in her capacity as a court-appointed guardian *ad litem* and in furtherance of the judicial process. *See Shophar v. City of Olathe*, 2017 WL 2618494, at *11 (D. Kan. June 16, 2017). There is no allegation in Plaintiff's First Amended Complaint that Welsh committed the allegedly wrongful acts in the absence of all jurisdiction, nor are there any facts alleged to support such an inference.

Plaintiff's allegations that Welsh acted in furtherance of her own financial benefit, schemed with Vogt, the father, and the father's counsel, ignored allegations of abuse, failed to report alleged abuse, and advocated for the father cannot deprive Welsh of immunity, even if the acts were wrongful or unlawful. *See Dahl*, 744 F.3d at 631; *see also Shophar*, 2017 WL 2618494, at *11. "[A] judicial officer may act 'in error,' 'maliciously,' and 'in excess of her authority,' and may

---

[3] Under South Carolina law, a *guardian ad litem* is not entitled to immunity "for actions beyond the scope of her duties." *Falk*, 533 S.E.2d at 353. In the Tenth Circuit, however, it is only if the *guardian ad litem* acts in the "clear absence of all jurisdiction" will immunity not be granted. *Dahl*, 744 F.3d at 630–31. In this Circuit, she may act in error, unlawfully, or even in excess of her authority, and still have immunity. *See Walker v. New Mexico*, 2015 WL 13651131, at *5 (D.N.M. Sept. 21, 2015).

commit 'grave procedural errors' or even 'unlawful' acts, and still receive the protections of absolute immunity." *Walker v. New Mexico*, 2015 WL 13651131, at *5 (D.N.M. Sept. 21, 2015) (quoting *Dahl*, 744 F.3d at 630–31 and *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000)). All of Plaintiff's allegations against Welsh involve acts she allegedly committed as part of her appointment as guardian *ad litem* for the minor children. At all times relevant, Welsh acted within, or at most, in excess of, the jurisdiction that the Tulsa County District Court delegated to her as guardian *ad litem* so she is entitled to quasi-judicial immunity. *See Walker*, 2015 WL 13651131, at *4. Therefore, Welsh cannot be liable under § 1983. *See Schwab v. Kan. Dept. of Children and Families*, 851 Fed. Appx. 110, 120–21 (10th Cir. 2021) (unpublished).

Even ignoring the guardian *ad litem's* immunity, "for purposes of § 1983, a court-appointed guardian is not a state actor because he or she represents the best interests of the individual, not the state." *Phan v. Volz*, 2021 WL 2213229, at *2 (D. Colo. April 15, 2021) (citing *Adams v. People of State of Colorado*, 1999 WL 273327, at *1 (10th Cir. 1999) (affirming dismissal of claim against 'court appointed attorneys, conservator and guardian *ad litem*' as legally frivolous because those individuals are not state actors for purposes of imposing liability under § 1983); *Bangerter v. Roach*, 467 F. App'x 787, 788 (10th Cir. 2012) (citing *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (guardians *ad litem* are not state actors for purposes of § 1983 because they give their 'undivided loyalty to the minor, not the state.')).

### b. Immunity Under Oklahoma Law

The Oklahoma Supreme Court has held, "[a] court-appointed guardian *ad litem* in a custody matter is immune from suit by the ward or any other party, for *all acts arising out of or relating to* the discharge of his duties as guardian ad litem." *Perigo v. Wiseman*, 11 P.3d 217, 217–18 (Okla. 2000) (emphasis added). Here, the acts Plaintiff complains of arise out of or relate to

Welsh's discharge of her duties as guardian *ad litem*. Therefore, like Plaintiff's federal claim against Welsh, Plaintiff's breach of contract and negligence state law claims are similarly barred and must be dismissed.[4]

### c. Defendant W&M

The only allegation against W&M is that "Defendant Welsh was at all relevant times hereto an employee and/or agent of Defendant WM and as such, Defendant WM is liable for her acts and omissions complained of herein under the legal doctrine of *respondeat superior*." Doc. 13, at ⁋ 4. Having concluded that Welsh is immune from suit, it follows that the claims asserted against W&M must likewise be dismissed.

## II.   Defendant Vogt

Vogt, in her motion to dismiss, contends dismissal is appropriate because she is entitled to immunity, the First Amended Complaint (Doc. 13) fails to state a claim, and abstention requires this Court to decline jurisdiction. Doc. 21. The Court agrees with Vogt that she is entitled to immunity and that Plaintiff failed to state a claim.

### a. Immunity

Vogt argues that she is entitled to the same quasi-judicial immunity available to guardians *ad litem*. Doc. 21, at 17–18. Vogt, relying on Oklahoma's *Hartley*, argues that since (1) Plaintiff agreed for her to provide counseling services, (2) the Court acknowledged this and appointed her as therapist on July 12, 2018, and (3) Plaintiff complains of Vogt's acts and omissions during this appointment, Vogt is entitled to quasi-judicial immunity. *Id.* Plaintiff disagrees. Though largely relying, again, on South Carolina law, Plaintiff—in a footnote—contends that *Hartley* is inapposite

---

[4] Because the Court concludes Welsh is entitled to immunity from suit, the Court need not address Welsh and W&M's argument that Plaintiff failed to state a claim.

here because Plaintiff is suing not based on Vogt's court testimony, but misconduct outside her testimony. Doc. 27, at 22–23 n.7.

Under federal law, Vogt is entitled to quasi-judicial immunity if (1) her role is functionally comparable to that of a judge, or (2) her acts are integrally related to an ongoing judicial proceeding. *Babb v. Eagleton*, 614 F.Supp.2d 1232, 1238 (N.D. Okla. June 18, 2008). The test for applying quasi-judicial immunity under federal law is similar if not identical to the Oklahoma test." *Id.* at 1238 n.5 (citing *Hathcock v. Barnes*, 25 P.3d 295, 297 (Okla. Civ. App. 2001) (holding that a psychologist appointed by the court to assist in making a custody determination was immune from suit because the psychologist was performing a "function integral to the judicial process")). To determine whether Vogt's actions are "integrally related to an ongoing judicial proceeding," she "must be engaged in acts that are 'integrally related not simply to the judicial process in general but to a concrete judicial case or controversy.'" *Id.* at 1239 (quoting *Mitchell v. Fishbein*, 377 F.3d 157, 174 (2d Cir. 2004).

In *Hartley v. Williamson*, the plaintiff-mother sued the defendant-psychologist (who was consented to by the parties and authorized by the court) for testimony he gave at a hearing in the custody matter. 18 P.3d 355, 356–57 (Okla. Civ. App. 2000). The court concluded the psychologist was entitled to immunity because the psychologist's "role was that of an advisor to the trial court, playing an integral part in the judicial decision-making process." *Id.* at 358. Similarly, in *Hathcock v. Barnes*, the court was faced with the issue of "whether a psychologist, appointed by the court to assist it in making a custody determination, performs a function integral to the judicial process thereby [entitling] the psychologist to immunity from lawsuits arising from this process." 25 P.3d 295, 296 (Okla. Civ. App. 2001). The court concluded that "a court-appointed psychologist is immune from liability while conducting evaluations and making recommendations to the trial

10

court determining child custody, a function integral to the judicial process." *Id.* at 297–98. Importantly, the court reasoned it is "depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation." *Id.* at 297. The court noted the plethora of jurisdictions agreeing with this immunity for court-appointed experts. *Id.* at 297 n.1 (collecting cases). Lastly, the court identified that if these

> court-appointed psychologists are subject to suit, they will be less willing to serve the court and if court-appointed psychologists are subject to suit, their opinions may be shaded in favor of the party most likely to sue them rather than a disinterested and objective opinion that a court seeks in making such an appointment.

*Id.*

So too under federal law has this immunity been similarly provided to court-appointed experts. *See Neill v. Godinez*, 2023 WL 4405005, at *3 (N.D. Okla. July 7, 2023) ("Officials with roles . . . to whom absolute 'quasi-judicial' immunity has been extended include: a court-appointed psychiatrist who interviewed a criminal defendant to assist the judge in assessing competency") (citing *Martinez v. Roth*, 1995 WL 261127, at *3 (10th Cir. 1995)); *see also Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (holding that child welfare workers are entitled to "judicial immunity because they acted as 'arms of the court,' similar to a guardian ad litem or a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request.").

Here, the Tulsa County District Court "appointed Defendant Vogt to act as a licensed therapist for A.R.V. and to protect his best interest." Doc. 13, at ⁋ 11. This appointment, according to Plaintiff, was granted for the same purpose as the guardian *ad litem*—to act in the children's best interest. *Id.* at ⁋ 10. Plaintiff maintains her claims against Vogt are not based on Vogt's court testimony, but rather are based on Vogt's alleged misconduct outside of Vogt's testimony. Thus, according to Plaintiff, the alleged facts plead in Plaintiff's First Amended Complaint are distinguishable from the facts giving rise to the holdings and precedent established under federal

11

and Oklahoma law supporting immunity for a court appointed therapist in a divorce and child custody case. In other words, Plaintiff asserts immunity does not extend to Vogt because her alleged misconduct extended beyond her court testimony. The Court is not persuaded by Plaintiff's analysis or argument. While Plaintiff's grievances against Vogt do not solely revolve around her in-court testimony, the alleged misconduct on the part of Vogt occurred during the appointment of and services rendered by Vogt during the divorce/custody proceedings in state court. Doc. 13, at ¶¶ 16–18, 20, 23, 26, 29. Although the allegations in Plaintiff's First Amended Complaint make clear that Plaintiff takes strong exception with Vogt's assessments and acts/omissions, Vogt as a court appointed therapist was still engaged in activity integrally related to the controversy present in the Tulsa County District Court divorce action and child custody case. *See Babb v. Eagleton*, 614 F. Supp. 2d at 1239. For these reasons and for the same reasons applicable to Welsh, Vogt is entitled to quasi-judicial immunity under both federal and Oklahoma law because her acts were integrally related to ongoing judicial proceedings. All claims against Vogt are dismissed with prejudice.

Even assuming Vogt is not entitled to quasi-judicial immunity, Plaintiff's claims against her would still be dismissed for failure to state a claim.

### b. Breach of Contract

Under Oklahoma law, a "breach of contract is a material failure of performance of a duty arising under or imposed by agreement." *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 69 (Okla. 1983). To state a claim for breach of contract, Plaintiff must allege: "(1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach." *Morgan v. State Farm Mutual Automobile Ins. Co.*, 488 P.3d 743, 748–49 (Okla. 2021). Plaintiff alleges the following:

> 11. The same Tulsa County District Court adopted the recommendations of Defendant Welsh and appointed Defendant Vogt to act as a licensed therapist for

> A.R.V. and to protect his best interest. Defendant Vogt was compensated for her services.
>
> 36. On August 14, 2018, Plaintiff signed a Financial Agreement Form and received a copy of the form from Defendant Vogt.
>
> 37. On June 12, 2020, Defendant Vogt emailed counsel and the guardian ad litem and altered and forged intake contract for the minor, A.R.V. The subpoena portion of the Financial Agreement Form is slashed thru and initialed by Defendant Vogt.
>
> 47. The individual Defendants were contractually obligated to diligently represent the best interest of the minor children in the above-referenced action.
>
> 48. Defendants breached these contracts when they became aware of the abuse being suffered by the minor children and failed to protect them.
>
> 49. As a result of these acts and omissions, the minor children were, and continue to be, exposed to prolonged physical and/or sexual and/or emotional abuse and neglect.
>
> 50. The breach by Defendants was the actual and proximate cause of the minor children's injuries.

Doc. 13, at ¶¶ 11, 36, 37, 47–50. Vogt argues in her motion that these allegations are insufficient, and merely providing conclusory, threadbare recitals of this claim is not enough. Doc. 21, at 7–8. Plaintiff responds that Vogt's "specious arguments" focus only on the "contract formation element," and that Plaintiff's allegations do support a claim for an implied contract. Doc. 27, at 14–15.

At most, Plaintiff's First Amended Complaint establishes the formation of a contract with respect to the therapy services to be provided to A.R.V. However, Plaintiff does not provide any facts regarding the provision(s) of the contract that was allegedly breached. The conclusory allegation that Vogt was obligated to diligently represent the best interest of the minor is insufficient. While Plaintiff does not need to provide detailed factual allegations, she must provide sufficient factual allegations that the Court—assuming all well-pleaded facts to be true—can determine Plaintiff's right to relief is plausible for the claim. *See Ridge at Red Hawk LLC v.*

13

*Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The current conclusory—and specious—breach of contract allegations do not plausibly allege a breach of contract claim. The breach of contract claim concerning services provided to A.R.V. must be dismissed.

Additionally, the Court notes Plaintiff presumably alleges all three (3) minor children were injured by Vogt's supposed breach of contract. *See* Doc. 13, at ¶¶ 47–50. However, the First Amended Complaint alleges that there was an intake contract for only A.R.V. *Id.* at ¶ 37. There is no allegation of any contract with respect to any therapy services provided to P.F.V. or H.S.V. To the extent Plaintiff asserts a breach of contract with respect to services provided to P.F.V. or H.S.V., Plaintiff has failed to allege formation of a contract, and so this claim must be dismissed.

   c. *Negligence Claim*

Next, Plaintiff claims:

> 52. [Vogt] owed a duty to the Vietti children to protect and actively pursue the most prudent and swift remedies available to save them from being exposed to irreparable harm. Instead, Defendants inexplicably delayed said intervention, thus delaying the ability to protect the minor children and expose them to continued abuse.
>
> 53. Defendants breached this duty by failing to protect the minor children and by acting recklessly with complete disregard for their health and well-being.
>
> 54. This breach was the actual and proximate cause of the injuries sustained.

Doc. 13, at ¶¶ 52–54. Vogt claims to the extent Plaintiff asserts a negligence claim against Vogt individually, it must be dismissed because the First Amended Complaint fails to allege what duties were owed by Vogt to Plaintiff, or how those duties were breached. Doc. 21, at 7–8. Vogt further argues Plaintiff's negligence claim premised on a failure to report abuse must be dismissed because there is not a private right of action for violating Oklahoma's statute requiring mandatory reporting. *Id.* Plaintiff responds apparently conceding she has not alleged a traditional negligence

14

claim but argues she is alleging a negligence per se claim,[5] and such a claim is viable. Doc. 27, at 11–14. Therefore, the Court will evaluate whether Plaintiff has plausibly alleged a negligence per se claim.

To state a claim for negligence per se, a plaintiff must allege the claimed injury was caused by the violation of a statute, was the type of injury intended to be prevented by the statute, and the injured party must be one of the class intended to be protected by the state. *See Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013). Wholly missing from Plaintiff's First Amended Complaint is specific identification of a statute that forms the basis of her negligence per se claim. *See* Doc. 13, at ¶ 15 (Plaintiff alleges, "Defendant Vogt failed to report suspected child abuse as required by Title 10A of the Children and Juvenile Code."). Further, the First Amended Complaint does not allege that the claimed injury was caused by the violation of the unidentified statute, was the type of injury intended to be prevented by the statute, or that Plaintiff or the minor children are of the class intended to be protected by the statute. Plaintiff has failed to state a claim for negligence per se and therefore, the claim is dismissed.

  d. *Section 1983 Claim*

Plaintiff asserts a § 1983 claim contending Vogt "acting under cover of state law, violated the Eighth and/or Fourteenth Amendments of the United States Constitution." Doc. 13, at ¶ 56. Plaintiff alleges Vogt has "been endowed by the Tulsa County Court with powers or functions governmental in nature, such that Defendants became instrumentalities of the State and subject to its constitutional limitations." *Id.* at ¶ 58. Vogt knew the minor children were in danger of serious harm, but Vogt denied, delayed, and obstructed immediate and emergent intervention to prevent

---

[5] Plaintiff states, "Defendant Vogt misunderstands Plaintiff's action. Plaintiff is not bringing a claim for liability under the statute; instead, Plaintiff is alleging a negligence *per se* for Defendant Vogt's failure to report under the statute." Doc. 27, at 12.

abuse. *Id.* at ¶¶ 59–60. Vogt moves to dismiss this claim contending she is not a state actor and cannot be liable for a § 1983 claim. Doc. 21, at 9–12. Plaintiff responds that she adequately pled Vogt is a state actor under the symbiotic relationship test or the public function test. Doc. 27, at 17.

A claim under 42 U.S.C. § 1983 requires an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted). The Tenth Circuit recognizes four tests when a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations: the nexus test, the public function test, the joint action test, and the symbiotic relationship test. *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). Plaintiff argues in her Response that she is proceeding under the public function test and the symbiotic relationship test. Doc. 27, at 17. Therefore, the Court will evaluate these two tests.

1. **The Symbiotic Relationship**

The symbiotic relationship test applies when "the state has so far insinuated itself into a position of interdependence with a private party it must be recognized as a joint participant in the challenged activity." *Wittner*, 720 F.3d at 777–78 (internal citations and quotation marks omitted). "[T]he analysis starts by asking whether and to what extent the state's relationship with the private actor goes beyond the mere private purchase of contract services." *Id.* at 778 (internal citations and quotation marks omitted). "[A] public-private relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities." *Id.*

16

Plaintiff argues in her Response "the [district] Court appointed Defendants Vogt and Welsh to assist the Court in performing the state's function of determining the custody of Plaintiff's children. The state, via the Court in the Divorce Action, put itself in a position of interdependence with the Defendants in determining custody." Doc. 27, at 17–18. Plaintiff cannot amend her First Amended Complaint in her response to the motion to dismiss. *See Abdulina v. Eberl's Temp. Services, Inc.*, 79 F.Supp.3d 1201, 1206 (D. Colo. 2015). The Court is limited to the allegations pled in Plaintiff's First Amended Complaint. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiff's First Amended Complaint alleges, "[t]he same Tulsa County District Court adopted the recommendations of Defendant Welsh and appointed Defendant Vogt to act as a licensed therapist *for A.R.V.* and to protect his best interest." Doc. 13, at ¶ 11 (emphasis added). Plaintiff's conclusory allegations that Vogt was "endowed by the Tulsa County Court with powers or functions governmental in nature, such that [Vogt became an' instrumentalit[y] of the State" is not supported by any factual averment. *Id.* at ¶ 58. The factual allegation is that Vogt was appointed as A.R.V.'s therapist and Vogt communicated "her findings and opinions" with Defendant Welsh. *See id.* at ¶¶ 11, 39. There are no factual allegations that Vogt had any relationship or contract with the Court, let alone a relationship that goes beyond the mere private purchase of contract services or that the Court and Vogt commingled their responsibilities. Plaintiff has failed to provide sufficient factual allegations for this Court to conclude Plaintiff has alleged Vogt is a state actor under the symbiotic relationship test.

2. The Public Function Test

The public function test asks "whether the challenged action is a traditional and exclusive function of the state." *Wittner*, 720 F.3d at 776–777. This test is "difficult to satisfy." *Gallagher v.*

17

*Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995). Traditional state functions include administering elections of public officials, the operation of a company-owned town, and the management of a city park. *See id.* Nursing home care, education of children, and enforcement of statutory lien by a private warehouse have been held to not be traditional state functions. *See id.*

Plaintiff's Response brief contends, "Defendants were assisting the District Court in performing one of the state's public functions—determining custody. The Court made Defendants 'officers of the Court with the authority to protect and foster the best interests of the minor children.'" Doc. 27, at 18. Plaintiff relies on an Order from the divorce action attached as an exhibit to her response. *Id.* Once again, this Court is restricted to considering the allegations asserted in the First Amended Complaint. Plaintiff's First Amended Complaint provides no factual allegation that Vogt was assisting the Tulsa County District Court in determining custody. Instead, the allegation is that Vogt was appointed to be A.R.V.'s therapist and to protect his best interest. Doc. 13, at ¶ 11. The First Amended Complaint also alleges Vogt provided forensic services by interviewing A.R.V. and P.F.V. *Id.* at ¶¶ 29, 31. Vogt's provision of therapy services to A.R.V. and interviewing P.F.V. and A.R.V. are not traditional and exclusive functions of the state. Notably, Plaintiff does not even allege in her First Amended Complaint or argue in her Response that such services are traditional state functions. Plaintiff has failed to allege Vogt is a state actor under the public function test.[6]

---

[6] Many other courts have also concluded that court-appointed therapists are not state actors for purposes of § 1983. *See James v. Grand Lake Mental Health Center, Inc.*, 161 F.3d 17 (10th Cir. 1998) (holding that a private therapist who had the plaintiff involuntarily confined based on state law "did not exercise some right or privilege or act under a rule of conduct created by state law" to be a state actor under § 1983); *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1996) (finding a private therapist's "conduct [did] not rise to the level of state action" and the therapist "did not exercise some right or privilege or act under a rule of conduct created by state law," so the therapist was not liable under § 1983); *Anderson v. Glismann*, 577 F. Supp. 1506, 1509 (D. Colo. Jan. 18, 1984) (holding that the "mere fact [the psychiatrist] acted as a court-appointed psychiatrist will not sustain a cause of action under section 1983"); *see also Landry v. Odom*, 559 F. Supp. 514 (E.D. La. 1983) (no state action where a private psychiatrist acted pursuant to state statute but without something more, that "is not sufficient to justify a characterization of him as a state actor"); *Hall*

Overall, although a court-appointed expert acts under the *authority* of a state, it does not necessarily follow they act on *behalf* of the state. *See Anderson v. Glismann*, 577 F. Supp. 1506, 1509 (D. Colo. Jan. 18, 1984). Because Plaintiff has failed to allege that Vogt is a state actor, Plaintiff's § 1983 claim against Vogt based upon violations of Eighth and/or Fourteenth Amendment rights is dismissed.

## CONCLUSION

Plaintiff Vietti's claims against Defendants Welsh and W&M are dismissed with prejudice. Welsh is entitled to quasi-judicial immunity as guardian *ad litem* and Plaintiff failed to state a claim against W&M. Plaintiff's claims against Defendant Vogt are dismissed with prejudice. Vogt is entitled to quasi-judicial immunity since her acts were integrally related to ongoing judicial proceedings, and additionally, Plaintiff failed to state a claim against Vogt.

**IT IS THEREFORE ORDERED** that Defendants Catherine Welsh and Welsh & McGough, PLLC's motion to dismiss (Doc. 20) is **GRANTED**; and that Defendant Jaime Vogt's motion to dismiss (Doc. 21) is **GRANTED**. All claims against Defendants are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

---

*v. Quillen*, 631 F.2d 1154, 1156 (4th Cir. 1980) (concluding that a state appointed physician is "entitled to dismissal of plaintiff's § 1983 action against [him] for want of state action").